TEMPLE ET AL., APPELLANTS, *v.* WEAN UNITED, INC., ET AL., APPELLEES.

318

(No. 76-946—Decided June 29, 1977.)

*Messrs. Tyack, Scott & Colley, Mr. Michael F. Colley,* and *Mr. Dennis N. Balske,* for appellants.

*Blake, Blake & Faulkner Co., L. P. A., Mr. Rodney R. Blake, Jr., Mr. Richard Wallace, Messrs. Finn, Manahan & Pietrykowski, Mr. John A. Pietrykowski, Messrs. Wright, Harlor, Morris & Arnold, Mr. Harry Wright, III,* and *Mr. Terrance M. Miller,* for appellees.

## I.

CELEBREZZE, J. This is a products liability action brought under theories of negligence, implied warranty, and strict liability in tort. The latter two counts are virtually indistinguishable,[1] and appellants concede by their brief that implied warranty has been included as a theory of liability in order to comply with the terminology of Ohio law.

The paramount Ohio decision in the law of products liability is *Lonzrick* v. *Republic Steel Corp.* (1966), 6 Ohio St. 2d 227. In *Lonzrick* this court traced the "slow, orderly and evolutionary development" in this area, and noted that *Rogers* v. *Toni Home Permanent Co.* (1958), 167 Ohio St. 244, and *Inglis* v. *American Motors Corp.* (1965), 3 Ohio St. 2d 132, provided the consumer with a cause of action in tort, based upon the breach of an express warranty, notwithstanding the lack of a contractual relationship between plaintiff and defendant. Whereas *Rogers* and *Inglis* imposed a warranty upon the manufacturer because of its adver-

---

[1]Although we have referred to this theory of liability in various ways, including "strict liability in tort for breach of implied warranty of fitness for ordinary use" (*Gast* v. *Sears Roebuck & Co.* [1974], 39 Ohio St. 2d 29, 31); "implied warranty, which is a form of strict liability in tort" (*McDonald* v. *Ford Motor Co.* [1975], 42 Ohio St. 2d 8, 10); and "strict liability" (*State Auto Mutual Ins. Co.* v. *Chrysler Corp.* [1973], 36 Ohio St. 2d 151, 156); it is recognized that this fictional "warranty" differs from those found in the sale of goods, since many of the traditional defenses and requirements arising out of the law of contracts are inapplicable. See Prosser, The Assault Upon the Citadel (Strict Liability to the Consumer), 69 Yale L. J. 1099 (1960).

tising to the public, *Lonzrick* dispensed with this rationalization, and thus the doctrine of strict liability in tort was adopted by Ohio.

It is now well established that, in order for a party to recover based upon a strict liability in tort theory, it must be proven that: "(1) There was, in fact, a defect in the product manufactured and sold by the defendant; (2) such defect existed at the time the product left the hands of the defendant; and (3) the defect was the direct and proximate cause of the plaintiff's injuries or loss." *State Auto Mutual Ins. Co.* v. *Chrysler Corp.* (1973), 36 Ohio St. 2d 151. Under Ohio law, a defect is considered to exist in a product which is not "of good and merchantable quality, fit and safe for * * * [its] ordinary intended use." *Lonzrick, supra,* at page 235.

Although acknowledging the absence of any mechanical malfunction, appellants contend that the power press was defective in that it was unreasonably dangerous and was placed in the hands of the user, Mrs. Temple, without adequate warning. This conception of defectiveness is premised upon Section 402 A of the Restatement of Torts 2d,[2] Comment J, which states that: "In order to prevent the product from being unreasonably dangerous, the seller may be required to give directions or warning

[2]Section 402A (2 Restatement of Torts 2d 347) reads as follows:

"Special Liability of Seller of Product for Physical Harm to User or Consumer.

"(1) One who sells any product in a defective condition unreasonably dangerous to the user or consumer or to his property is subject to liability for physical harm thereby caused to the ultimate user or consumer, or to his property, if

"(a) the seller is engaged in the business of selling such a product, and

"(b) it is expected to and does reach the user or consumer without substantial change in the condition in which it is sold.

"(2) The rule stated in Subsection (1) applies although

"(a) the seller has exercised all possible care in the preparation and sale of his product, and

"(b) the user or consumer has not bought the product from or entered into any contractual relation with the seller."

* * * as to its use." Although this court has never expressly adopted Section 402 A as the standard for strict liability in tort, we did, in *Lonzrick, supra,* cite Section 402A, as well as *Greenman* v. *Yuba Power Products* (1963), 59 Cal. 2d 57, 377 P. 2d 897, the first case to apply the principles underlying the section. Since *Greenman* was decided, the rule of the Restatement has been adopted or approved by the vast majority of courts which have considered it.[*] Because there are virtually no distinctions between Ohio's "implied warranty in tort" theory and the Restatement version of strict liability in tort,[4] and because the Restatement formulation, together with its numerous illustrative comments, greatly facilitates analysis in this area, we hereby approve Section 402 A of the Restatement of Torts 2d.

## II.

Under Section 402A, as well as under our case law, a plaintiff must prove that the product was defective at the time it left the seller's hands. *Lonzrick, supra,* at page 237; Section 402A, *supra,* at Comment G. In addition, Section 402A(1)(b) imposes strict liability only where the defective product reaches "the user or consumer without substantial change in the condition in which it is sold."

---

[*]*E. g., O. S. Stapley Co.* v. *Miller* (1968), 103 Ariz. 556, 447 P. 2d 248; *Bradford* v *Bendix-Westinghouse Auto. Air Brake Co.* (1973), 33 Colo. App. 99, 517 P. 2d 406; *Garthwait* v. *Burgio* (1965), 153 Conn. 284, 216 A. 2d 189; *Stewart* v. *Budget Rent-A-Car Corp.* (1970), 52 Hawaii 71, 470 P. 2d 240; *Shields* v. *Morton Chemical Co.* (1974), 95 Idaho 674, 518 P. 2d 857; *Suvada* v. *White Motor Co.* (1965), 32 Ill. 2d 612, 210 N. E. 2d 182; *Cornette* v. *Searjeant Metal Products, Inc.* (1970), 147 Ind. App. 46, 258 N. E. 2d 652; *Hawkeye-Security Ins. Co.* v. *Ford Motor Co.* (Iowa 1970), 174 N. W. 2d 672; *Dealers Transport Co.* v. *Battery Distributing Co.* (Ky. 1966), 402 S. W. 2d 441; *State Stove Mfg. Co.* v. *Hodges* (Miss. 1966), 189 So. 2d 113; *Webb* v. *Zern* (1966), 422 Pa. 424, 220 A. 2d 853; *Ritter* v. *Narragansett Elec. Co.* (1971), 109 R. I. 176, 283 A. 2d 255; *McKisson* v. *Sales Affiliates, Inc.* (Tex. 1967), 416 S. W. 2d 787; *Dippel* v. *Sciano* (1967), 37 Wis. 2d 443, 155 N. W. 2d 55.

[4]See, *e. g.*, Note, Products Liability: A Synopsis, 30 Ohio St. L. J. 551 (1969).

The evidence of record reveals that prior to the date of the accident Superior had a company policy which specified that all power press activating buttons be located facing upward, waist high, 24 inches apart. Pursuant to this policy, upon receipt of the press, Superior altered the existing method of guarding by lowering the buttons, which were at that time shoulder high. Clearly, in relation to the danger of unintentional activation, this alteration was a "substantial change" within the meaning of Section 402 A (1)(b). Indeed, it is our conclusion that there was no original defect of any sort in the punch press, and that, as a matter of law, Superior's alteration of the safety device, coupled with the utilization of the press for the stamping of stock long enough to bridge the 24 inch gap between the buttons, was the sole responsible cause of the maiming of Mrs. Temple.

This holding is in harmony with the decisions of other courts wherein workers were injured after there had been substantial changes, subsequent to purchase, in the condition of a power punch press.

In *Hanlon* v. *Cyril Bath Co.* (C. A. 3, 1975), 541 F. 2d 343, the court reviewed a products liability suit brought against the manufacturer of a power press to recover for injuries which purchaser's employee sustained when he accidentally activated the machine. The starting mechanism orginally supplied with the press was a treadle, which required the operator to lift his foot a considerable distance and exert some 65 pounds of downward pressure to activate the machine. After purchasing the press, plaintiff's employer substituted an easily activated portable electric foot switch for the treadle. The court held that this substitution was a substantial change in the condition in which the press was sold, and that the defendant manufacturer was entitled to a directed verdict.

In *Keet* v. *Service Machine Company* (C. A. 6, 1972), 472 F. 2d 138, the court reviewed a products liability action brought against the manufacturer of a punch press which was later sold to plaintiff's employer. Unlike the instant

cause, plaintiff established that the press malfunctioned, resulting in the severance of his right hand. The court held, however, that because there was no substantial evidence tending to prove that the machine was defective at the time it was manufactured and sold to plaintiff's employer, and there was evidence that the employer had made repairs on the machine prior to the accident, a verdict could properly have been directed for defendant-manufacturer.

In *Hardy* v. *Hull Corp.* (C. A. 9, 1971), 446 F. 2d 34, the court reviewed an action, brought under the theory of strict liability, by a plaintiff whose thumbs were crushed in a mold press sold by the defendant-manufacturer to her employer. The court noted that the evidence failed to establish that the press, as it was originally sold, was in a defective condition, or was unreasonably dangerous. Rather, the evidence disclosed that the press, after purchase, had been modified by plaintiff's employer, and that such modifications made it dangerous. Accordingly, the court held that a verdict was properly directed for the manufacturer.

Although the above cases provide sufficient support for our decision to absolve the manufacturer, Wean, and the subsequent vendor, G. M., from strict tort liability to appellants, we have not as yet specifically addressed the case against Square D. This appellee manufactured the operating buttons which were ordered and installed on the Warco press by Superior.

We note that the Caveat to Section 402A states that "[t]he Institute expresses no opinion as to whether the rules stated in this section may not apply * * * (3) to the seller of a component part of a product to be assembled." In our opinion, the obligation that generates the duty to warn does not extend to the speculative anticipation of how manufactured components, not in and of themselves dangerous or defective, can become potentially dangerous dependent upon the nature of their integration into a unit designed and assembled by another. Because of limited contact with Superior, there is no indication that Square D could have

known that its components were to be fashioned or fabricated into the power press in the particular manner that they were.

Appellants, however, also point out that among the hundreds of items manufactured by Square D were horse-shoe-shaped button guards, and that it was thus their duty to warn that the button assembly was potentially dangerous without such guards. This argument must fail, since the deposition of Superior's engineer reveals that several years prior to the accident the company was aware that the button guard could be purchased, and that such guarding would prevent unintentional depression of the buttons. Manifestly, it would be futile to require that Square D notify the employee of that which the responsible party, the employer, was already aware.

### III.

We have thus far discussed appellees' liability in terms of strict tort liability. It is, however, apparent that the rule imposing obligation on the manufacturer or seller to give suitable warning of a dangerous propensity of a product is a rule fixing a standard of care, and any tort resulting from the failure to meet this duty is, in essence, a negligent act. See Prosser on Torts (4 Ed.), Section 96. In Ohio, the case law has established that a manufacturer or vendor is negligent when he has knowledge of a latent defect rendering a product unsafe and fails to provide a warning of such defect. *Sams* v. *Englewood Ready-Mix Corp.* (1969), 22 Ohio App. 2d 168; *Burns* v. *Pennsylvania Rubber & Supply Co.* (1961), 117 Ohio App. 12.

This court need not determine if the location of the operating buttons was a latent or obvious defect. As we have noted above, the defect arose by virtue of Superior's alteration, after purchase, of the dual activating button device. It is evident that appellees did not know, nor could they have known, of a defect that was created by a subsequent purchaser. Therefore, they cannot be held liable under the theory of negligent failure to warn.

Appellants have also alleged that Wean negligently

designed the power press. To date, no Ohio case has specifically defined the duties of a manufacturer relative to product design, but the general rule is that "* * * [i]t is the duty of a manufacturer to use reasonable care under the circumstances to so design his product as to make it not accident or foolproof, but safe for the use for which it is intended." *Gossett* v. *Chrysler Corp.* (C. A. 6, 1966), 359 F. 2d 84, 87.

Appellants contend that the press was negligently designed, in that Wean failed to provide a fixed barrier guard which would prevent the hands or fingers of the operator from entering into the danger zone between the die and the ram. This court is aware of the difficulty and open-endedness inherent in passing judgment upon the reasonableness of a manufacturer's conscious design choices. See Henderson, Judicial Review of Manufacturers' Conscious Design Choices: The Limits of Adjudication, 73 Colum. L. Rev. 1531 (1973). For aid in reducing this open-endedness to a manageable level, we look to statutory regulation.

R. C. 4101.11 imposes upon the employer the duty to protect employees by, *inter alia*, following and obeying orders of the Industrial Commission. See *State, ex rel. Holdosh* v. *Indus. Comm.* (1948), 149 Ohio St. 179. One such order, Industrial Commission Safety Code IC-5, provides as follows:

"IC-5-08.03 POWER PRESSES
   "(A) GUARDING
      "(1) Construction

"Every power press in use shall be constructed, or shall be guarded to prevent the hands or fingers of the operator from entering the danger zone during the operating cycle.
   "* * *

   "(B) ACCEPTABLE METHODS OF GUARDING
   "(1) Manual Feed Presses, by:
   "(a) Gate Guard * * *
   "(b) *Fixed Barrier Guard* * * *
   "(c) Sweep Guard * * *

"(d) Pull and Restraint or Hold-Back Guard * * *

"(e) *Two-Hand Tripping Device* * * *

"(f) Limitation of ram stroke * * *

"(g) Electronic Guard * * *

"(h) Photoelectric or Selenium Guard * * *

"(i) Magnetic Guard * * *

"(j) Use of Special Tools * * *" (Emphasis added.)

In view of this regulation, which specifies that either a fixed barrier guard or a two-hand tripping device (with which this press was equipped) are acceptable methods of guarding, this court holds that the question of whether or not the manufacturer was negligent in not providing fixed barrier guards should be answered, as a matter of law, in the negative.

IV.

Both in this court and in the Court of Appeals below appellants have argued that the trial court erred in granting appellees' motions for protective orders and for summary judgment.

The record indicates that representatives of all the parties to this cause were present at the depositions of Superior's company president, chief engineer, and press room foreman. The testimony of these three individuals fully supports our conclusion, noted above, that the sole responsible cause of the injuries received by Mrs. Temple was Superior's modification of the method of guarding on the power press.

Civ. R. 56(C) specifically provides that before summary judgment may be granted, it must be determined that: (1) No genuine issue as to any material fact remains to be litigated; (2) the moving party is entitled to judgment as a matter of law; and (3) it appears from the evidence that reasonable minds can come to but one conclusion, and viewing such evidence most strongly in favor of the party against whom the motion for summary judgment is made, that conclusion is adverse to that party.

Applying the standard set out above to both the facts of record and the formulation of strict liability in tort con-

tained in Section 402A of the Restatement of Torts 2d, it is our conclusion that summary judgment was properly rendered for the appellees.

With regard to appellants' assertion that the trial court committed error by granting appellees' motions for protective orders, we can see no prejudice resulting to the rights of the appellants in light of our holding that appellees are entitled to judgment as a matter of law based solely upon the testimony of Superior company employees.

For the foregoing reasons, the judgment of the Court of Appeals is affirmed.

*Judgment affirmed.*

W. BROWN, SWEENEY and LOCHER, JJ., concur.

O'NEILL, C. J., HERBERT and P. BROWN, JJ., concur in paragraphs three, four and five of the syllabus and in the judgment.

O'NEILL, C. J., concurring.

I concur in paragraphs three, four and five of the syllabus and the judgment.

Paragraphs one and two of the syllabus are not necessary to the decision in this case.

The majority opinion, at page 323, states as follows:

"* * * it is our conclusion that there was no original defect of any sort in the punch press, and that, as a matter of law, Superior's alteration of the safety device, coupled with the utilization of the press for the stamping of stock long enough to bridge the 24 inch gap between the [safety] buttons, was the sole responsible cause of the maiming of Mrs. Temple."

That language forms the basis for the formulation of paragraph three of the syllabus, which rule is dispositive of this case except for the issue of the safety button guards. Paragraph four of the syllabus states the rule which is dispositive of that issue.

The holding of the majority that the sole responsible

cause of the injury to the plaintiff was the acts of her employer, and the further holding that there was no original defect of any sort in the punch press, make it unnecessary and inappropriate to determine in general, without facts upon which to base a rule of law, what sort of defect would make the original manufacturer and the successor seller liable to the injured employee on the theory of strict liability in tort as a matter of law.

HERBERT and P. BROWN, JJ., concur in the foregoing concurring opinion.