**In re Gary Lee AMES and Vicki J. Ames, Debtors–in–Possession.**

**Gary Lee AMES and Vicki J. Ames, Plaintiffs,**

v.

**MASTER FEED MILL, INC., Defendant.**

**Bankruptcy No. 1–86–00587.**
**Adv. No. 1–86–0277.**

United States Bankruptcy Court, S.D. Ohio, W.D.

Feb. 16, 1989.

Richard D. Nelson, Case Attorney, Cincinnati, Ohio, for plaintiffs.

Stephen K. Shaw, Case Attorney, Cincinnati, Ohio, for defendant.

Charles M. Caldwell, Asst. U.S. Trustee, Cincinnati, Ohio.

### DECISION and ORDER ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

BURTON PERLMAN, Chief Judge.

In this adversary proceeding, plaintiffs seek damages from defendant, a feed supplier, who, they say, sold them tainted and contaminated feed grain which caused the death of a large number of pigs. The third cause of action in the complaint is framed as one for strict liability under the laws of the State of Ohio. Defendant has moved for summary judgment on this cause of

action. It asserts that in the circumstances of the transaction here involved, it would be contrary to the law of the State of Ohio to find liability on the basis of strict liability.

In support of its motion, defendant has filed the affidavit of Paul Dome, owner and president of defendant. In addition, defendant relies upon the Disclosure Statement of plaintiffs. In opposing the motion, plaintiffs have filed the affidavit of Vicki J. Ames, and also rely upon an answer to interrogatories by defendant. Plaintiffs requested an oral argument, and one was held.

The relevant facts are as follows. The defendant owns and operates a grain storage facility, a warehouse, in Hillsboro, Ohio, which is bonded and licensed by the State of Ohio and the Federal Government. Its business was the storing and grinding of grain for feed. Defendant did not purchase grain from plaintiffs nor sell grain to them during the period here in question. Defendant did not receive title to any of plaintiffs' grain in that period. Plaintiffs withdrew from their account in the defendant grain bank all grain which they had delivered to the grain bank.

Defendant processed grain delivered to them by plaintiffs for storage. Upon receipt, grain was weighed, tested for moisture, and visually inspected for damage. It was then dumped into one of the receiving pits to be elevated into one of the bins for storage or drying. Grain that required drying was put into one of two or three wet holding tanks, and dried as soon as possible through one of two dryers until dry enough for storage (13% to 15% moisture). Grain was processed by being ground in defendant's mills and then mixed to customers' specifications. Grain was then stored in dry bins equipped with aeration fans and temperature gauges. Plaintiffs, in the course of their dealings with defendant, had the option of receiving back the grain in the condition in which it had been delivered, unground, or to receive back ground grain to which supplements may have, on the order of plaintiffs, been added. Defendant made separate charges for drying,

storing, grinding and delivering grain. There was an occasion in 1985 after a dispute between the parties over a balance due from plaintiffs to defendant when defendant sold some of the grain belonging to plaintiffs and retained the proceeds. The relevant time period here in question is about March, 1985.

The essential basis for the present motion for partial summary judgment is that the undisputed facts depict a transaction in the nature of a bailment, not a sale, and there must be a sale before application of the doctrine of strict liability is appropriate. Plaintiffs respond to this thrust by contending that the law of strict liability does not depend upon so rigid a classification. In addition, plaintiffs contend that even if defendant is correct in its analysis of the law, the facts here should be construed as constituting a sale.

Ohio has approved the Restatement, Second, Torts § 402(a) version of strict liability in tort. *Temple v. Wean United, Inc.*, 50 Ohio St.2d 317, 364 N.E.2d 267 (1977). The Restatement at § 402(a) says:

Special Liability of Seller for Physical Harm to User or Consumer

(1) One who sells any product in a defective condition unreasonably dangerous to the user or consumer or to his property is subject to liability for physical harm thereby caused to the ultimate user or consumer, or to his property, if

(a) the seller is engaged in the business of selling such a product, and

(b) it is expected to and does reach the user or consumer without substantial change in the condition in which it is sold.

(2) The rule stated in Subsection (1) applies although

(a) the seller has exercised all possible care in the preparation and sale of his product, and

(b) the user or consumer has not bought the product from or entered into any contractual relationship with the seller.

The comments following § 402(A) in the Restatement reiterate that this is a special rule applicable to sellers of products (Com-

ment a), and that it applies to any person engaged in the business of selling products for use or consumption. It therefore applies to any manufacturer of such product, to any wholesale or retail dealer or distributor, and to the operator of a restaurant. The rule does not apply to the occasional seller of food or other such products who is not engaged in that activity as part of his business. (Comment f).

■ Strict liability applies to sales of goods and not to services. A court has rejected a plaintiff's reliance of strict liability in tort where plaintiff contracted hepatitis as a result of a blood transfusion. The procuring, furnishing or distribution of blood was a rendition of a service, pursuant to state statute, not a sale, and thus not within the scope of the doctrine of strict liability. *Morse v. Riverside Hospital,* 44 Ohio App.2d 422, 339 N.E.2d 846 (1975).

After considering the words of the Restatement, § 402(A) and its comments, as well as pertinent case law, we find that the sale of a product is a necessary element of strict liability.

■ The foregoing does not conclude our inquiry, for it is still necessary to deal with the contention of plaintiffs that the facts here are to be construed as a sale. Movant vigorously contends that the present facts can only be held to show a bailment relationship between the parties. The facts are not in dispute. Plaintiffs, growers of grain, delivered grain to defendant to be stored by it. In connection with the storage, defendant rendered the further service of drying the grain and processing it into feed in its mill, adding supplements to the mix if requested by plaintiffs. The grain, of course, was a fungible commodity, and there was redelivered to plaintiffs, after processing, not the very grain which plaintiffs had delivered to defendant, but other grain from its stores. That it was not the very same article which was redelivered, as is commonly the case with fungible products, does not make the present transaction a sale. *Inglebright v. Hammond,* 19 Ohio 337 (1850); *O'Dell v. Leyda,* 46 Ohio St. 244, 20 N.E. 472 (1889).

Further, the fact that defendant dried and ground plaintiffs' grain for a fee did not make the transaction a sale for present purposes. To hold otherwise would be inconsistent with the purpose of strict liability. The purpose of the doctrine is to impose liability upon a seller or a product which the seller offers to the general public, not where, as here, there is a direct relationship between the two parties to the transaction, and one of them is processing the goods of the other. In the latter case, questions of liability must be determined pursuant to traditional negligence concepts.

■ Following the hearing, defendant filed by leave a further memorandum to support its position that the second cause of action in the complaint, that for breach of warranty, should also be dismissed. Its argument is that defendant in fact is a warehouseman under the laws of Ohio, and the duty of a warehouseman is to exercise ordinary care as to goods bailed.

We deny defendant's motion in this regard. While defendant may store goods, the fact is that that is not all that it did with respect to grain delivered to it. It also processed the grain. It dried, ground, and added supplements. In respect to these operations, it was performing operations beyond those rendered by a warehouseman.

Defendant's motion for summary judgment is granted to the extent that it seeks dismissal of the third cause of action, that based on strict liability. It is denied as to dismissal of the second cause of action, that for breach of warranty.

So Ordered.