**JENKINS et al., Appellants,**

**v.**

**RITENOUR Supt., Appellee.**

[Cite as *Jenkins v. Ritenour* (1989), 64 Ohio App.3d 525.]

Court of Appeals of Ohio,
Fairfield County.

No. 47–CA–88.

Decided Sept. 21, 1989.

Dagger, Johnston, Miller, Ogilvie & Hampson and Ray R. Michalski, for appellants.

Anthony J. Celebrezze, Jr., Attorney General, and Laurel D. Blum, Assistant Attorney General, for appellee.

MILLIGAN, Presiding Judge.

This is an action for relief under the Real Estate Recovery Fund, R.C. 4735.12. The Fairfield County Common Pleas Court found that the case does not fall within the provisions of R.C. Chapter 4735 and, finding that the applicants are not entitled to relief, granted summary judgment dismissing the action.

The applicants appeal, assigning a single error:

"Assignment of Error

"The lower court's decision that appellants are not entitled to payment out of the Real Estate Recovery Special Account (Revised Code § 4735.12) is against the weight of the evidence and is contrary to law."

In response to Loc.R. 4, appellants state:

"This is an appeal from the grant of a Summary Judgment in favor of Appellee, and, in accordance with Local Appellate Rule 4(D), Appellants state that their claim of error on the part of the lower court is that the judgment is inappropriate on the undisputed facts."

In 1980, Whitestead, Inc., an Ohio corporation, was both a licensed real estate broker and the owner of a tract of land in Fairfield County being developed as Shadow Oaks subdivision number 2. The entire subdivision was encumbered by a blanket mortgage to State Savings Bank. Appellants (Jenkins) purchased Lot Number 81 for $14,200. The "real estate purchase

contract" provided for the delivery of a marketable title in fee simple, "free and clear of all liens and encumbrances."

The contract was executed by Kenneth Stead, Vice President of Whitestead, Inc., and himself a licensed real estate salesman.

Stead failed to apply any portion of the purchase price to the blanket mortgage, and failed to procure a release for Lot 81.

After the bank foreclosed on the allotment balance, including Lot 81, applicants, in exchange for the payment of $16,425.73, procured a release of the encumbrance upon Lot 81.

Applicants thereafter commenced an action against Kenneth Stead and others for damages resulting from Stead's defalcation. Judgment was ultimately entered against Stead.

Additionally, Stead was found by the Ohio Department of Commerce, Division of Real Estate, to have violated R.C. 4735.18(F) and his sales license was suspended for sixty days.

Jenkins's efforts to collect the Stead judgment have been to no avail, and the instant action was filed in search of recovery.

The trial court ultimately granted the September 12, 1988 motion for summary judgment of defendant, Margaret J. Ritenour, Superintendent of Real Estate. The motion was supported with no affidavits. Civ.R. 56(A).

In their response, appellants supplied no affidavits or other testimony.

The only evidence supplied in support of and in opposition to the motion for summary judgment was a purported stipulation of fact. This stipulation of fact is not separately filed for record and is not referenced in the transcript of docket and journal entries. Inscribed thereon is the handwritten notation, "filed as a part of AG's Motion of 9–12–88."

"Summary judgment shall be rendered forthwith if the pleading, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence in the pending case, and written stipulations of fact, if any, timely filed in the action, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Civ.R. 56(C).

We extrapolate from the "stipulations of fact" the salient provisions:

"2. The word 'licensee' means any person holding a real estate broker's or salesman's license.

"3. The word 'underlying proceeding' means the action in which the applicant(s) obtained a judgment against the licensee for which recovery is sought, to-wit: Fairfield County Common Pleas Case Number 58163.

" * * *

"10. Whitestead, Inc., as owner in fee simple of Lot 81, was acting on its own account and was not acting on behalf of any other person when it agreed to sell Lot 81 to the Jenkinses.

"11. On or about January 26, 1981, Whitestead, Inc., conveyed by warranty deed a fee simple interest in Lot 81 to J. Carlton Jenkins and Merle Jenkins, in exchange for payment of Fourteen Thousand Two Hundred and 00/100 Dollars ($14,200.00). (Attached as Exhibit 6) 12. The aforementioned warranty deed contained a covenant by the grantor, Whitestead, Inc., whereby it was bound to remove and satisfy all mortgages encumbering Lot 81.

" * * *

"13. Kenneth Stead's duty to apply the $14,200.00 received as the purchase price of Lot 81 was a duty imposed upon Kenneth Stead as an agent of the selling corporation, Whitestead, Inc., of which he was an officer."

The purchase agreement is identified as a real estate purchase contract on a form adopted by the Columbus Board of Realtors and the Columbus Bar Association. It contains a large block R, realtor, and the Whitestead name is engraved as a mast head. The agreement was signed by Jenkins and Kenneth J. Stead, Vice President of Whitestead, Inc.

The Real Estate Recovery Fund is a special fund created within the state treasury to be administered by the Superintendent of Real Estate. Its obvious purpose is to provide recompense for persons who have been damaged as a result of breach of unique, professional responsibilities imposed upon licensed real estate brokers and salesmen.

As a special proceeding, in derogation of the common law, its procedural and substantive requirements must be strictly followed. *Dent v. Van Winkle* (1987), 30 Ohio St.3d 80, 30 OBR 228, 507 N.E.2d 345.

An applicant must satisfy a number of hurdles to gain recovery from the fund.

R.C. 4735.12 provides in part:

"(B) When any person * * * obtains a final judgment in any court of competent jurisdiction against any broker or salesman licensed under this chapter, on the grounds of conduct that is in violation of this chapter or the rules adopted under it, that occurred after March 4, 1975, and that is associated with an act or transaction of a broker or salesman specified or comprehended in division (A) or (C) of section 4735.01 of the Revised Code, such person may file a verified application, as described in this division, in any court of common pleas for an order directing payment out of the real estate

recovery fund of the portion of the judgment that remains unpaid and that represents the actual and direct loss sustained by the applicant. * * *

" * * *

"The court shall order the superintendent to make such payments out of the fund when the person seeking the order has shown all of the following:

"(1) He has obtained a judgment, as provided in this division;

"(2) All appeals from the judgment have been exhausted and he has given notice to the superintendent, as required by division (C) of this section;

"(3) He is not a spouse of the judgment debtor, or the personal representative of such spouse;

"(4) He has diligently pursued his remedies against all the judgment debtors and all other persons liable to him in the transaction for which he seeks recovery from the fund;

"(5) He is making his application not more than one year after termination of all proceedings, including appeals, in connection with the judgment."

In the context of this case, and its limited facts, the Superintendent of Real Estate claims that Kenneth Stead was not a "real estate salesman."

R.C. 4735.01 provides in pertinent part:

"(C) 'Real estate salesman' means any person associated with a licensed real estate broker to do .or to deal in any acts or transactions set out or comprehended by the definition of a real estate broker, for compensation or otherwise."

The linchpin of disassociation from liability or recovery is the "for another" language of the definition of a "real estate broker."

R.C. 4735.01 provides in part:

"(A) 'Real estate broker' includes any person, partnership, association, or corporation, foreign or domestic, who for another, whether pursuant to a power of attorney or otherwise, and who for a fee, commission, or other valuable consideration, or with the intention, or in the expectation, or upon the promise of receiving or collecting a fee, commission, or other valuable consideration:

"(1) Sells, exchanges, purchases, rents, or leases, or negotiates the sale, exchange, purchase, rental, or leasing of any real estate;

" * * *

"(6) Advertises or holds himself out as engaged in the business of selling, exchanging, purchasing, renting, or leasing real estate;

" * * *

"(8) Is employed by or on behalf of the owner of lots, or other parcels of real estate, at a stated salary, or upon a commission, or upon a salary and commission basis or otherwise, to sell such real estate, or any parts of it, in lots or other parcels, and who sells, exchanges, or offers, attempts, or agrees to negotiate the sale or exchange of any such lot or parcel of real estate[.]"

The ten enumerated categories of activity for a "real estate broker" are also applicable, by definition, to a salesman. Those not enumerated above are irrelevant to this cause.

■ In the case *sub judice*, although argued by brief, there is no testimonial assertion, and no stipulated fact, even suggesting that the purchasers were dealing with Stead as a real estate salesman. In fact, the stipulation specifically identified Stead, and his activities, as the activities of his principal, *i.e.*, Whitestead, Inc.

We find the reasoning of the Hamilton County Court of Appeals in *Schoen v. McClenaghan* (May 21, 1986), Hamilton App. No. C–850391, unreported, 1986 WL 5962, persuasive.

We have also examined *Ball v. Ritenour* (1989), 46 Ohio App.3d 88, 546 N.E.2d 479.

In *Ball,* Sue Ann Ball contacted Franklin Hale, a licensed real estate agent who was then employed by the DiSalle Real Estate Company, to sell her two businesses. Ball gave DiSalle Real Estate the exclusive right to sell one of her businesses for a listing price of $25,000. Fourteen days later, Hale offered Ball $40,000 for both businesses. Ball accepted and a half month later Hale withdrew his purchase offer.

The court held that Ball could not recover from the Real Estate Recovery Fund because there was no evidence that Hale's conduct violated R.C. Chapter 4735. Although the offer Hale made was set out on a DiSalle form, the offer was not submitted by Hale on behalf of a third party. The offer bore only Hale's name in the space marked "purchaser." Hale was an agent for DiSalle, but there was no evidence that he was acting for DiSalle when he made the purchase offer.

We thus conclude, upon the unique state of this record, the superintendent is entitled to judgment as a matter of law.

In so holding, we are not prepared to say that in a proper case; upon appropriate evidentiary supplication, there could not be a valid claim against the fund where the seller-owner is also a real estate broker, and where the agent of the owner is also a licensed salesman. *Temple v. Wean United, Inc.* (1977), 50 Ohio St.2d 317, 4 O.O.3d 466, 364 N.E.2d 267.

Here, there is simply no evidence and no stipulation that Stead was acting as a real estate salesman *for another* in the transaction that resulted in his defalcation.

The single assignment of error is overruled and the judgment of the Fairfield County Common Pleas Court is affirmed.

*Judgment affirmed.*

HOFFMAN, J., concurs.

SMART, J., dissents.

SMART, Judge, dissenting.

I dissent.

The legislative purpose in establishing the Real Estate Recovery Fund is, as a majority points out, to provide a fund from which persons damaged as a result of the actions of a licensed real estate broker and/or salesperson may recover. It is plain to me that the legislative purpose is defeated if we refuse to allow recovery where a real estate sales agent acts for the real estate brokerage firm to sell property owned by the broker. This case demonstrates the potential for harm to the purchasers, and leaves them without an adequate remedy.

I further feel that the majority has ignored a fundamental point of agency law. The broker in this case is a corporation, and a corporation cannot act except by and through its agents. The owner of this property, Whitestead, Inc., is a person under the laws of the state of Ohio, but could by no means have acted to sell this property except through another person. The stipulations of the parties contain no indication that the parties agreed that Kenneth Stead, the agent, was identified with his principal, Whitestead, Inc. The stipulations instead clearly indicate that the parties to this action considered there were two persons involved. In my view, Kenneth Stead necessarily acted as the agent for the owner of the property, and not as the owner himself.

Furthermore, when a corporation is represented by one who is both an officer and also trained and licensed in a particular specialty, I think it is unfair that the agent be allowed to shed his special status and disclaim his special duty.

Kenneth Stead was a licensed real estate agent at the time in question; he acted for another who was the owner of the property; he violated R.C.

4735.18, losing his license for a time as a result. Appellants should be permitted to recover from the fund.

I would sustain the assignment of error.