### Hoover v. Homlar
*[Cite as 8 AOA 8]*

*Case No. C-890688*
*Hamilton County, (1st)*
*Decided November 7, 1990*

*Per Curiam.*

This cause came on be heard upon the appeal, the transcript of the docket, journal entries and original papers from the Hamilton County Court of Common Pleas, the briefs and the arguments of counsel.

Plaintiff-appellant Hazel Hoover presents on appeal a single assignment of error in which she challenges the entry of summary Judgment for defendants-appellees J. Richard Homlar and Rehabilitation Associates on her complaint to recover damages for an injury to her knee allegedly suffered as a result of negligent physical therapy administered by Homlar.

On September 16, 1985, Dr. Edward J. Zenni, Jr., an orthopedic surgeon, performed knee-replacement surgery on Hoover's right knee to alleviate the symptoms associated with degenerative arthritis and a vulgus deformity of the knee. Hoover was released from the hospital on September 23, and from October 1 through October 17, she underwent six forty-five-minute

physical-therapy sessions with Homlar at her home. The sessions proceeded without incident until October 15, when Hoover complained to Homlar that, at a prior session,[1] he had applied excessive force to flex her knee and, since that time, she had experienced pain in the knee.

Whatever her complaints about the physical therapy procedures employed by Homlar, Hoover, in the course of her post-operative treatment with Dr. Zenni, did not complain to him of pain in her knee until January 1986 and did not voice to him her concern that the pain was attributable to Homlar's October 1985 therapy sessions until July 1986, Hoover's post-operative treatment with Dr. Zenni began on October 21, 1985, four days after she had completed her six physical-therapy sessions with Homlar. X-rays taken at that time of Hoover's knee with her leg fully extended showed the knee in the proper position, and Hoover's sole complaint was of pain in her foot, The same type of x-ray, taken during Hoover's November 1985 visit, similarly showed no irregularities in the knee. In January 1986, Hoover complained to Dr. Zenni for the first time of pain in her knee. Her complaints continued, but x-rays taken with her leg extended in January, March and May 1986 continued to show the knee in its proper position. Finally, in June 1986, Dr. Zenni had a "tunnel-view" x-ray taken of Hoover's knee, with the knee flexed, which revealed for the first time a dislocation of the patella. Hoover underwent a second surgical procedure in August 1986 to repair the dislocation of the patella. She continued treatment with Dr. Zenni until November 1986, when x-rays disclosed a rupture of the patellar tendon, at which point Hoover sought alternative treatment.

In October 1987, Hoover brought an action against Homlar and his employer, Rehabilitation Associates, alleging that Homlar's negligence in applying excessive force to her knee caused a dislocation of the right patella, which, in turn, caused her pain and suffering and necessitated a second operation. After a period for discovery, during which Hoover, Homlar and Dr. Zenni were deposed, the defendants moved for summary judgment. On September 23, 1989, the trial court entered summary judgment for the defendants, and Hoover appealed.

Liability for negligence is predicated upon injury caused by the failure to discharge a duty owed to the injured party. *Moncol v. Bd. of Education* (1978), 55 Ohio St. 2d 72, 378 N.E.2d

155. Thus, to sustain an action founded upon negligence, a plaintiff must demonstrate:

(1) that the defendant had a duty, recognized by law, requiring him to conform his conduct to a certain standard for the protection of the plaintiff;

(2) that the defendant failed to conform his conduct to that standard; and

(3) that the defendant's conduct proximately caused the plaintiff to sustain actual loss or damage. See *Id.*

The standard governing the disposition of the defendants' motion for summary judgment is set forth in Civ. R. 56. Pursuant thereto, a party against whom a claim is asserted may move, with or without supporting affidavits, for summary judgment in his favor on all or any part of the claim. Civ. R. 56(A). A motion for summary judgment may be granted if the court, upon viewing the inferences to be drawn from the underlying facts set forth in the pleadings, depositions, answers to interrogatories, written admissions, and affidavits in a light most favorable to the party opposing the motion, determines:

(1) that no genuine issue of material fact remains to be litigated;

(2) that the moving party is entitled to judgment as a matter of law; and

(3) that the evidence demonstrates that reasonable minds can come to but one conclusion, and that conclusion is adverse to the party opposing the motion. *Temple v. Wean United, Inc.* (1977), 50 Ohio St. 2d 317, 364 N.E.2d 267; Civ. R. 56(C).

The defendants assert in support of the entry of summary judgment in their favor that Hoover failed to present expert testimony to establish the standard of care from which Holmar allegedly deviated or to establish that Homlar's alleged deviation from the requisite standard of care was the proximate cause of Hoover's injury. From our examination of the record, we conclude otherwise.

As we noted *supra*, the evidence before the trial court on the defendants' motion for summary judgment consisted of the depositions of Hoover, Homlar and Dr. Zenni. Dr. Zenni was not qualified to testify and did not testify to the requisite standard of care for a physical therapist. The standard of care in a professional negligence action may be established, however, by the deposition testimony of the defendant, *Johnson v. Hammond* (1988), 47 Ohio App. 3d

*10*

125, 547 N.E.2d 1004, and in the instant case, we conclude that Homlar did just that.

Hoover testified in her deposition that, at the October 10 physical-therapy session with Homlar, while she was seated in a chair with her right knee partially flexed, Homlar grasped her ankle and applied excessive force to flex the knee to its fullest extent. Homlar, in his deposition, denied using excessive force in flexing Hoover's knee and, in explaining his denial, effectively established the standard of care for a physical therapist in employing the subject technique when he stated:

"*** she said I took her knee and stuck it back against the chair or pushed it back and just kept pushing it. You don't do that with a knee, you really don't do that with a patient. *** nobody does, a therapist or a person, takes a knee and pushes it. You just don't do it. You rock it gently, you bounce it a little bit that way and, yes, I did that firmly and gently, but when you get an end play, either she tightened up or she objected verbally, and she did object on occasion, and I would quit right then. You don't take it past that point." T.d. 16 at 41-42.

We also find evidence of a causative link between Homlar's alleged deviation from the requisite standard of care and the injury sustained by Hoover, sufficient to withstand the defendants' motion for summary judgment. Dr. Zenni, in his deposition, expressed his opinion that the dislocation of Hoover's right patella was caused by Homlar's "forcible flexion" of her knee. T.d. 12 at 36-37. Dr. Zenni properly predicated his opinion upon his review of his records, his examination of Hoover, and Hoover's statement to him, offered for the purpose of medical treatment, that the persistent pain in her knee originated with her physical-therapy sessions with Homlar, See Evid. R. 703. Dr. Zenni further testified that the nine-month delay, between October 1985 and June 1986, in diagnosing the dislocation might have been attributable to the type of x-rays taken prior to June 1986 and the type of dislocation suffered by Hoover. He explained that the x-rays taken of Hoover's knee before June 1986, with her leg fully extended, would disclose only a chronic, fixed dislocation of the patella and that only a "tunnel-view" x-ray, with the knee flexed, would reveal the condition from which Hoover suffered, viz., a chronically dislocating patella. Dr. Zenni, therefore, concluded that the dislocation could have occurred in October 1985 and not

been diagnosed until June 1986, when the "tunnel-view" x-ray was taken.

Viewing the evidence before us most strongly in favor of Hoover, we conclude that summary judgment was improvidently granted for the defendants when genuine issues of material fact remain as to whether Homlar deviated from the requisite standard of care in treating Hoover and whether that deviation proximately caused Hoover's injury. We, therefore, sustain Hoover's sole assignment of error, reverse the judgment entered below, and remand this cause for further proceedings consistent with law and this decision.

UTZ, P.J., SHANNON and DOAN, JJ.

_____

[1] Hoover alleged in her complaint that the pain in her knee dated from the October 3, 1985, session with Homlar, and Homlar testified in his deposition that Hoover complained to him on October 15 of the treatment administered at the October 3 session. Hoover stated in her deposition, however, that her injury resulted from the October 10 session with Homlar.