**BEST TECHNOCRAFT INDUSTRIES, INC. et al., Appellants,**

v.

**ISHMAEL et al., Appellees.**

[Cite as *Best Technocraft Industries, Inc. v. Ishmael* (1996), 110 Ohio App.3d 185.]

Court of Appeals of Ohio,
Eleventh District, Lake County.

No. 95–L–051.

Decided April 1, 1996.

*David J. Sternberg* and *Nadine Albenze* for appellants.

*Paul H. Hentemann* for appellees.

———————

NADER, Judge.

This is an accelerated appeal from a judgment of the Lake County Court of Common Pleas.

In April 1993, appellant, Paul Slapnicker, and appellee, John J. Ishmael, formed a new corporation, appellant, Best Technocraft Industries, Inc. ("BTI"). At the time of incorporation, BTI had no credit, so, in order to acquire immediate telephone service, Ishmael used his personal credit card to charge the deposit required by the telephone company. Thus, telephone service was in his name rather than the corporate name. Payment of the telephone bills was subsequently made from BTI's account.

On June 1, 1994, Ishmael entered into a written agreement to sell his share of the corporation to Slapnicker. The agreement provided:

"6. This Agreement is intended to be a full and complete settlement of all issues between the parties. Accordingly, Ishmael and Arnold each hereby waive and release all claims he/she may have against BTI, and/or Slapnicker, and/or any other employee, agent, accountant or attorney of BTI * * *.

"Further, BTI and Slapnicker hereby waive and release all claims it/he may have against Ishmael, Arnold and/or Hentemann arising from or in any way related to any actions taken and/or services provided for or on behalf of BTI. " * * *

"8. * * * The parties shall reasonably cooperate in implementing the terms and conditions set forth herein."

No later than July 2, 1994, Ishmael directed the telephone company to terminate service. Slapnicker learned of the disconnection when he arrived at the office on the morning of July 2, 1994 and found the telephone line to be dead. Ishmael stated in his affidavit that, on July 2, 1994, he received a telephone call at his home from the telephone company regarding an unpaid telephone bill at BTI. He claimed that he told the telephone representative to contact Paul Slapnicker about the debt, but was informed that he was responsible since the telephone service was in his name, and that the only way to prevent further liability was to stop the telephone service. Thus, he instructed the representative to stop service immediately. Ishmael stated that the telephone call from the telephone company took him by surprise and that he had no idea how to reach Slapnicker.

The affidavit of Slapnicker avers that, shortly after using his own credit card to pay the $225 deposit for the phone service, John Ishmael wrote a BTI corporate check in this amount to his wife, appellee Betty Ishmael, thereby recovering the personal expenditure. A canceled check with the notation "telephone deposit repayment" was attached to the motion. Slapnicker further averred that BTI was current on its payments to the phone company and that payment for the June 1994 bill was not due until July 12. He asserted that a check was issued on June 24, 1994 in full payment of the June bill. Attached to the affidavit is a canceled check dated June 24, 1994. The back of the check indicates that the

check was cashed on July 7, 1994. Because of the holiday weekend, the telephone company's offices were not open until July 5, 1994. It was at this point that Slapnicker learned of the reason for the disconnection of service. A document attached to John Ishmael's affidavit indicates that Ishmael executed the necessary paperwork to transfer the name of the account from Ishmael to Slapnicker on July 7, 1994, and that service was restored on that date. According to Slapnicker's affidavit, Ishmael could have contacted Slapnicker or left a message at his home or at the office if in fact he was contacted by the telephone company on July 2, but did not do so.

On November 18, 1994, appellants filed a complaint against appellees, John and Betty Ishmael, alleging causes of action in breach of implied warranty, breach of implied covenant, and intentional interference with a business contract. On January 6, 1995, appellees filed a motion for summary judgment, which was subsequently granted by the trial court.

Appellants timely filed a notice of appeal with two assignments of error:

"1. The trial court erred in granting defendants' motion for summary judgment as there were genuine issues of material fact in dispute and as defendants were not entitled to judgment as a matter of law.

"2. The trial court erred in granting defendants' motion for summary judgment for the reason that the trial court misunderstood plaintiffs' complaint and defendants are not entitled to judgment as a matter of law."

These assignments are interrelated and will be addressed concurrently.

Appellants contend that the trial court erred in granting appellees' motion for summary judgment as there exist genuine issues of material fact, and, therefore, appellees are not entitled to judgment as a matter of law.

Pursuant to Civ.R. 56(C), summary judgment may be granted when:

" '(1) No genuine issue as to any material fact remains to be litigated; (2) the moving party is entitled to judgment as a matter of law; and (3) it appears from the evidence that reasonable minds can come to but one conclusion, and viewing such evidence most strongly in favor of the party against whom the motion for summary judgment is made, that conclusion is adverse to that party.' " *Temple v. Wean United, Inc.* (1977), 50 Ohio St.2d 317, 327, 4 O.O.3d 466, 472, 364 N.E.2d 267, 274.

The moving party bears the burden of showing that no genuine issue exists as to any material fact. *Harless v. Willis Day Warehousing Co.* (1978), 54 Ohio St.2d 64, 66, 8 O.O.3d 73, 74, 375 N.E.2d 46, 47. Once the moving party has satisfied this burden, the nonmoving party must then produce evidence upon any issue which it bears the burden of production at trial. *Wing v. Anchor Media,*

*Ltd. of Texas* (1991), 59 Ohio St.3d 108, 111, 570 N.E.2d 1095, 1099. The nonmoving party may not rest upon the allegations or denials of his pleading, rather, he must set forth facts, by affidavit or otherwise, showing that there is a genuine issue for trial. Civ.R. 56(E); *Mitseff v. Wheeler* (1988), 38 Ohio St.3d 112, 526 N.E.2d 798.

The affidavits submitted by the parties in the instant action give conflicting testimony about when, how and why telephone service to BTI was disconnected by Ishmael. Appellants presented evidence that BTI's phone service, while nominally in Ishmael's name, was paid for by appellants, that BTI was current on payments when the service was disconnected, and that Ishmael caused service to be terminated without transferring it into the name of appellants or notifying Slapnicker, thereby denying them the opportunity to avoid interruption of service. In contrast, the defendants presented evidence that Ishmael was contacted by the telephone company and notified of a default in payment, that Slapnicker could not be contacted, and that the telephone service had to be disconnected to avoid further personal liability.

This court concludes that appellants' response to appellees' motion for summary judgment raised sufficient issues of material fact to preclude final disposition of the action. The trial court's entry states:

"It cannot be said that the share purchase agreement addressed an obligation on the part of Ishmael to maintain phone service, at his expense and for the benefit of the Plaintiffs, after Ishmael had sold his shares to Slapnicker. Based on this point, summary judgment is granted to the Ishmaels on Count I and II of the Complaint."

Appellants did not allege in their complaint that Ishmael had a duty to maintain the telephone service at his own expense, but that Ishmael was required to take reasonable steps to terminate the relationship without causing unnecessary damage to appellants.

Because genuine issues of material fact exist, appellants' assignments of error have merit. The judgment of the trial court is reversed, and the cause is remanded for further proceedings consistent with this opinion.

*Judgment reversed*
*and cause remanded.*

FORD, P.J., concurs.

JOSEPH E. MAHONEY, J., dissents.

JOSEPH E. MAHONEY, Judge, dissenting.

I respectfully dissent from the foregoing opinion based upon the majority's conclusion that appellants raised genuine issues of material fact so as to preclude summary judgment. After reviewing appellants' argument, it is clear that the disputed facts were not material and had no bearing on the outcome which was properly reached by the trial court.

First, appellants claim that there was a dispute as to when Ishmael ordered the telephone service shut off. Ishmael stated that he talked to the telephone company on July 2, 1994, but Slapnicker claimed that the telephones were already disconnected when he arrived at work on July 2, 1994. Clearly, whether the telephones were shut off on July 2 or a day or two earlier is simply not a material fact. As the trial court correctly pointed out, under the purchase agreement, after June 1, 1994, Ishmael had no duty to keep the telephone service in his name.

Next, appellants claim that there was a genuine issue regarding whether the telephone bill was overdue on July 2, 1994. Again, however, this issue was immaterial since Ishmael had no duty to keep the telephone service in his name whether or not the bill was paid on time.

Next, appellants assert that there was a genuine issue regarding whether Ishmael tried to contact Slapnicker before he had the telephone service disconnected. However, since Ishmael had no duty to notify Slapnicker, this issue is also immaterial.

Finally, appellants claim that there was a genuine issue regarding whether appellees' attorney knew of the situation involving the telephones. Clearly, this was immaterial. Accordingly, appellants have failed to raise a genuine issue of *material* fact so as to avoid the granting of summary judgment.

Appellants also claim that the trial court misunderstood their complaint as evidenced by the following statement made by the trial court in its decision:

"It cannot be said that the share purchase agreement addressed an obligation on the part of Ishmael to maintain phone service, at his expense and for the benefit of the Plaintiffs, after Ishmael had sold his shares to Slapnicker. Based on this point, summary judgment is granted to the Ishmaels on Count I and II of the Complaint."

Appellants argue that the complaint did not allege that Ishmael had a duty to maintain the telephone service at his own expense, but that the purchase agreement contained an implied warranty of good faith that required Ishmael to relinquish all control of the business. Under this implied warranty, Ishmael had the duty to transfer the business telephones from his name directly to appellants.

It is clear, however, that the purchase agreement was silent as to the telephone service, and, as the trial court properly held, Paragraph 6 explicitly terminated any remaining liabilities between the parties. Thus, Ishmael had no duty to transfer the telephone service directly to appellants. Accordingly, there is no evidence that the trial court misunderstood appellants' complaint.

Based on the foregoing analysis, I would affirm the trial court's judgment, and I must, therefore, respectfully dissent.