OPINION
{¶ 1} This is an appeal by plaintiffs-appellants, Commercial Movers, Inc. ("Commercial Movers"), Designed Moves, Inc. ("Designed Moves") and Executive Transfer Storage ("Executive Transfer"), from a judgment of the Franklin County Court of Common Pleas, denying appellants' motion for summary judgment and granting summary judgment in favor of defendants-appellees, David Walton ("Walton"), Premier Office Movers, LLC ("Premier Office") and Facilities Resource Group, LLC ("Facilities Resource"), on appellants' declaratory judgment action to determine whether Walton was in violation of a non-compete provision.
 {¶ 2} On November 29, 2002, Commercial Movers, Designed Moves, and Executive Transfer (collectively "appellants") filed a declaratory judgment action against Walton, Premier Office and Facilities Resource (collectively "appellees"). The complaint also asserted causes of action for breach of contract and conversion of trade secrets.
 {¶ 3} The complaint alleged that Walton worked for Commercial Movers from November of 1980[1] through February 28, 2001, and that Commercial Movers and Walton entered into a covenant not to compete on July 17, 1995. It was further alleged that appellants and Walton entered into a severance agreement on August 28, 2000, and that Walton resigned effective February 28, 2001. Appellants alleged that, following Walton's resignation, they learned he was violating the non-compete provisions of his agreement through his subsequent work for Premier Office and Facilities Resource. Appellants sought in part a declaration that the non-compete provisions in the 1995 agreement between Commercial Movers and Walton remained effective until February 28, 2003.
 {¶ 4} Appellees filed an answer on January 21, 2003. Walton also filed a counterclaim against Commercial Movers, seeking declaratory judgment that he was not in violation of the non-compete provisions of the 1995 agreement.
 {¶ 5} On April 30, 2003, appellants filed a motion for partial summary judgment. On October 17, 2003, appellees filed a memorandum contra the motion for partial summary judgment. Also on that date, appellees filed their own motion for summary judgment.
 {¶ 6} On May 3, 2004, the trial court conducted an oral hearing on the parties' pending motions. At the conclusion of the hearing, the court announced that summary judgment would be entered in appellees' favor as to appellants' claim for declaratory judgment and in appellees' favor on the counterclaim for declaratory judgment. The trial court filed a judgment entry reflecting the same on May 24, 2004, including the following determinations as to the rights and responsibilities of the parties under the agreements at issue: (1) Walton's employment with Commercial Movers ended March 7, 1999, and, thus, the 1995 non-compete agreement's two-year restrictions began to run on March 8, 1999, and expired on March 7, 2001; (2) the post-employment restrictions in the severance agreement between Walton and appellants began to run on August 22, 2000, and expired on August 21, 2002. Finally, the trial court granted appellants' motion to dismiss counts two and three of the complaint without prejudice.
 {¶ 7} On appeal, appellants set forth the following single assignment of error for review:
The Court erred in finding Appellee David Walton's Severance Agreement, signed August 28, 2000, did allow Defendant/Appellee David Walton to compete with Plaintiff/Appellant Commercial after March 9, 2001.
 {¶ 8} At issue in this appeal is whether the trial court erred in granting summary judgment in favor of appellees on appellants' action for declaratory judgment. Appellants' primary contention is that the court erred in failing to declare that Walton's covenant not to compete should have run from February 28, 2001 (the date appellants contend Walton was terminated by Commercial Movers) through February 28, 2003.
 {¶ 9} An appellate court reviews a trial court's entry of summary judgment de novo, applying the same summary judgment standard as the trial court. Coventry Twp. v. Ecker (1995), 101 Ohio App.3d 38, 41-42. In Temple v. Wean United, Inc. (1977), 50 Ohio St.2d 317, 328, the Ohio Supreme Court noted that, before summary judgment may be granted, a trial court must first determine that:
(1) No genuine issue as to any material fact remains to be litigated; (2) the moving party is entitled to judgment as a matter of law; and (3) it appears from the evidence that reasonable minds can come to but one conclusion, and viewing such evidence most strongly in favor of the party against whom the motion for summary judgment is made, that conclusion is adverse to that party.
 {¶ 10} We begin by setting forth the language of the various agreements at issue. On July 17, 1995, Walton and Commercial Movers executed a "COVENANT NOT TO COMPETE" (hereafter "1995 non-compete agreement"), which stated, in relevant part:
* * * During the term of this Agreement, Walton specifically covenants and agrees that he will not manage, operate, control, be employed by, own or engage in, either directly or indirectly, any business or any interest in any business that is competitive with that of CMI, either for himself or any other individual, partnership, proprietorship, association, firm or corporation, and he will not work with or for or be employed by or advise or consult with or for any such business, and he will not, either directly or indirectly, own, manage, operate, control, participate in or be connected with any business enterprise which is located or doing business within a 150 mile radius of any CMI office and is engaged in the moving and/or storage business or is otherwise competitive with the business of CMI.
* * * The term of this Agreement shall be for a period of two (2) years following the termination of the employment relationship between CMI and Walton. * * *
 {¶ 11} On April 30, 1999, Allied Professional Employer Group, Inc. ("Allied") and Commercial Movers executed a workforce management services agreement ("workforce agreement"), effective March 8, 1999. The workforce agreement provided, in pertinent part:
* * * The Company [Allied] shall be the employer of the employees. The Company, working with and through the On-Site Supervisors, has the authority and obligation to exercise all control over the employees, including, but not limited to (a) to determine whether a person is hired, disciplined or retained, (b) to supervise compliance with Company policies, (c) reprimand, suspend, terminate or otherwise discipline employees, (d) monitor and control conduct of employees, (e) adjust employee grievances, (g) handle labor relations with employees, (f) create, implement and enforce polices that comply with standards, [statutes] and regulations regarding labor relations and the workplace and, (i) generally to determine and control all conditions of employment of the assigned employee's at the Subscriber's business.
 {¶ 12} On August 28, 2000, Walton signed a severance agreement with Allied, Designed Moves, Executive Transfer and Commercial Movers (designated collectively as "the Company"). The severance agreement stated in part:
1. Employee and the Company acknowledge and agree that on August 25, 2000, Employee voluntarily resigned his position with the Company effective February 28, 2001 and all of his work with, earned compensation, including two weeks of vacation pay, from and employment with the Company ended. Employee agrees and acknowledges that as of August 25, 2000 and upon his resignation that Employee no longer has any authority as an officer or otherwise to bind the Company in any manner.
* * *
11. Employee agrees for a period of two (2) years from the date this Agreement is executed by Employee that Employee will not, by himself or with others, organize or plan any business activity that would be competitive with any current business activity of the Company as of the date of this Agreement.
12. Employee agrees and acknowledges the parties' previous non-compete agreement dated July 17, 1995 as executed by Employee and the Company as part of this Severance Agreement. * * * Should this Severance Agreement contradict the Employee's and Company's previous non-compete agreement July 17, 1995, the conflict shall be resolved in favor of the original non-compete agreement dated July 17, 1995.
13. Employee further agrees not to divert, solicit, or attempt to divert or solicit, any business enjoyed or solicited by the Company during the 24 month period immediately preceding the date Employee executes this Agreement.
14. Employee agrees for a period of two (2) years from the date this Agreement is executed by Employee that Employee will not, directly or indirectly, hire or attempt to hire any employee of the Company or take any other action that would encourage any such employee to leave the employment of the Company.
 {¶ 13} In considering the above provisions, the trial court, in granting summary judgment in favor of appellees, made the following findings:
* * * Pursuant to the paragraphs II(A) and (B) and III(D) of the March 8, 1999 Workforce Management Services Agreement (the "Allied Workforce Agreement") entered into by and between Plaintiffs and Allied Professional Employer Group, Inc. ("Allied"), * * * Walton's employment with Plaintiffs ended on March 7, 1999.
* * * The two-year post-employment restrictions set forth in the Non-Compete Agreement by and between Commercial and Walton * * * began to run on March 8, 1999 when Walton ceased to be employed with Plaintiffs and became employed with Allied, and the Non-Compete Agreement's two-year restrictions expired two years later on March 7, 2001.
* * * Allied terminated Plaintiff's employment on August 22, 2000.
* * * The Severance Agreement by and between Plaintiffs, Walton and Allied, which was executed and became effective on August 28, 2000, set forth certain restrictions regarding Walton's post-employment activities at paragraph 14 * * *. These restrictions began to run on August 22, 2000, and expired two years later on August 21, 2002.
 {¶ 14} Upon review, we agree with the trial court that, at the time the workforce agreement was executed between Commercial Movers and Allied, Commercial Movers ceased to be the employer of Walton. The terms of the 1999 workforce agreement provided that Allied (identified under the agreement as the "Company") and Commercial Movers (identified as the "Subscriber") agreed to "substantively and materially change the nature of the employment relationship at the Subscribers worksite," whereby "[t]he Company shall be the employer of the employees." The workforce agreement accorded Allied "the authority and obligation to exercise all control over the employees, including, but not limited to" determining whether an individual "is hired, disciplined or retained," reprimanded, suspended, terminated or otherwise disciplined, as well as the authority "to determine and control all conditions of employment" of the assigned employees "at the Subscriber's business." Thus, pursuant to the terms of the workforce agreement, Walton's employment relationship with Commercial Movers terminated effective March 8, 1999, and he (as well as the other employees of Commercial Movers) became employed by Allied at that time. As previously noted, the 1995 non-compete agreement provided in part that its terms "shall be for a period of two (2) years following the termination of the employment relationship between CMI [Commercial Movers] and Walton." Construing the provisions of the 1995 non-compete agreement, and the subsequently executed workforce agreement, we agree with the trial court that the two-year restrictions set forth in the 1995 non-compete agreement between Walton and Commercial Movers began to run on March 8, 1999, and expired on March 8, 2001.
 {¶ 15} We further agree with the trial court that, with respect to the August 2000 severance agreement entered between Allied, appellants and Walton, the two-year restrictions under that agreement ended in August 2002. Specifically, the severance agreement prohibited Walton, for a period of two years from the date the agreement was "executed," from organizing or planning any business activity that would be in competition with the "Company." Walton, who was terminated from his employment on August 22, 2000, executed the severance agreement on August 28, 2000, and, therefore, the two-year restriction under the severance agreement ended on August 28, 2002.
 {¶ 16} Accordingly, the trial court did not err in denying appellants' motion for partial summary judgment and in granting summary judgment in favor of appellees, and appellants' single assignment of error is overruled.
 {¶ 17} Finally, appellees' motion to strike unsupported facts from appellants' reply brief is denied as moot. Based upon the foregoing, appellants' single assignment of error is overruled, and the judgment of the Franklin County Court of Common Pleas is hereby affirmed.
Judgment affirmed.
Bryant and Klatt, JJ., concur.
[1] In their answer, appellees alleged that Walton began working for Commercial Movers in 1987.