WINKELMANN, et al., Appellants,

v.

CEKADA, et al., Appellees.

[Cite as *Winkelmann v. Cekada* (1999), 137 Ohio App.3d 176.]

Court of Appeals of Ohio,
Ninth District, Medina County.

No. 2854–M.

Decided Nov. 24, 1999.

*Patricia Francis Maynard,* for appellants.

*Gregory A. Huber,* for appellees.

BAIRD, Presiding Judge.

The Medina County Court of Common Pleas granted summary judgment to Mario and Karen Cekada in the nuisance action brought against them by Werner and Margrit Winkelmann. The Winkelmanns have appealed from the judgment.

The Winkelmanns have asserted that the trial court erred when it granted summary judgment denying their request for (1) damages and injunctive relief on

their claim of private nuisance on the basis that the Cekadas' use of their land is agricultural and (2) a declaratory judgment that the defendants were not entitled to an " 'agricultural' exemption to the rural residential zoning code of the Township of Brunswick Hills." [1] The grant of summary judgment on both issues was premised on the Cekadas using their property for agricultural purposes.

## I

The Winkelmanns purchased 1579 Marks Road in March 1972, within a few months of the Cekadas' purchase of 1547 Marks Road. Later that year, the Cekadas purchased the property between 1547 and 1579 Marks Road. In 1976, the Winkelmanns constructed a home on their lot. According to the Winkelmanns, during the early years the Cekadas experimented with various "financial endeavors" on their property, including assembling furniture in their barn and leasing the parcel between the two homesites to a farmer. Eventually, according to the Winkelmanns, the Cekadas settled on growing nursery stock. As evidence of when the Cekadas started their nursery business, the Winkelmanns submitted copies of credit applications, on which the Cekadas provided dates between 1982 and 1984 as their initial year in business.

Over the years, according to the Winkelmanns, the primary emphasis of the business shifted from growing nursery stock to marketing nursery stock, with the current focus of the operation being "the purchases of nursery stock, it's [sic] storage, and marketing." By affidavit, the Winkelmanns contended that there was a "massive upsurge in activity in 1989" and another "substantial increase in activity during 1996." The "resulting continual airborne dust and dirt; the continuous noise from running machinery, tractor-trailer trucks and skid loaders; and the fumes from diesel fuel became unbearable and * * * prevented [them] from using their property, except for short periods of time, during almost all reasonable weather."

The Winkelmanns provided a partial diary of the activity they observed at the Cekadas, which included trucks entering and leaving seven days a week, as early as 2:45 a.m., with the last run of the day generally around 7:00 p.m. That pattern was confirmed by the Cekadas' response to an interrogatory about vehicle traffic. The Cekadas indicated that traffic occurred nearly daily, began early, and generally ran until around seven in the evening.[2] In April 1996, one of the worst

---

1. The assignments of error are presented in the reverse order from the order in the appellants' brief.

2. Although the interrogatory requested information about vehicle traffic, the Cekadas provided information only about the trucks that they owned, not about the additional customer trucks that the Winkelmanns' diary reports were also entering and leaving during the same period.

months, there were only two days during which there was no truck traffic, and two days during which traffic started at nine in the morning. On the remaining twenty-six days of the month the trucks started between 4:00 a.m. and 7:30 a.m., with the traffic starting 6:00 a.m. or earlier on seventeen of those days.

The Cekadas purchased their property in 1972, and built their home in 1975. According to Mario Cekada's affidavits, their nursery business has been in continuous operation since 1972, long before the Winkelmanns built their home next door. In the spring of 1973, they planted five to seven hundred seedlings. At all relevant times, according to Mario Cekada's affidavits, they tended nursery stock on their own property and on property under contract to them. In addition, they sold nursery stock. The stock sold as part of their nursery business included stock dug "in our own fields," in "fields under contract to us," and "from suppliers under contract to us." Stock purchased from the third source included both dug and in-ground stock. Stock from all three sources was transferred to and tended above ground in an area the Cekadas referred to as "our yard." Customers for the Cekadas' nursery stock ranged from individuals to municipalities. Once purchased, the stock was loaded onto customer vehicles or onto vehicles owned by the Cekadas for transportation off the property.

"Trucks, trailers, and equipment" used in the business were repaired on site. The Cekadas also "developed a master plan for the execution of natural landscape barriers for privacy and the reduction of noise and dust for our benefit and the benefit of our neighbors and * * * implemented that plan on an ongoing basis." In response to a request to admit that the Winkelmanns had told them that the fumes, noise and sounds bothered them, the Cekadas stated that the "[n]oise, dust, and fumes from tractor trailers at the business site would not be so much as to be unreasonable to an average person."

## II

### A. Private Nuisance

The Ohio Revised Code provides a statutory basis for a nuisance action. "Whenever a nuisance exists * * * any person who is a citizen of the county in which the nuisance exists may bring an action in equity in the name of the state, upon the relation of * * * the person, to abate the nuisance and to perpetually enjoin the person maintaining the nuisance from further maintaining it." R.C. 3767.03. If a private individual initiates the action pursuant to this statute, that individual is required to post a bond to protect the defendant against the legal costs associated with a wrongful or aborted prosecution. R.C. 3767.03. R.C. Chapter 3767 defines several prohibited nuisances, including any activity which, "by occasioning noxious exhalations or noisome or offensive smells, becomes

injurious to the health, comfort or property of individuals or of the public." R.C. 3767.13(A).

In addition, the common-law tort of private nuisance survived the enactment of R.C. Chapter 3767. See *Pizza v. Sunset Fireworks Co.* (1986), 25 Ohio St.3d 1, 6–7, 25 OBR 1, 5–6, 494 N.E.2d 1115, 1119–1121, agreeing with the district court that R.C. 3767.03 did not limit the ability of the prosecutor to seek injunctive relief from a common-law nuisance. See, also, *Christensen v. Hilltop Sportsman Club, Inc.* (1990), 61 Ohio App.3d 807, 573 N.E.2d 1183.

When the asserted nuisance is related to agricultural activity there are two statutory defenses to liability. Persons engaged in agricultural activities within agricultural districts, as defined by R.C. 929.04, are broadly exempt from nuisance suits.

"In a civil action for nuisances involving agricultural activities, it is a complete defense if:

"(A) The agricultural activities were conducted within an agricultural district;

"(B) Agricultural activities were established within the agricultural district prior to the plaintiff's activities or interest on which the action is based;

"(C) The plaintiff was not involved in agricultural production; and

"(D) The agricultural activities were not in conflict with federal, state, and local laws and rules relating to the alleged nuisance or were conducted in accordance with generally accepted agriculture practices." R.C. 929.04.

In order for land to be placed in an agricultural district, the land must consist of ten acres or more, satisfy exclusive agricultural-use requirements, produce an average annual gross income of at least $2,500, and have been used in a manner consistent with these restrictions for at least the three years preceding initial eligibility. R.C. 929.02(A). The county auditor must approve or deny the application. If approval is denied, the denial is subject to appeal. R.C. 929.02(A)(2). Once the application is approved, the land is deemed to have been placed in an agricultural district "upon the date of the application." *Id.* The land is then in the agricultural district for a five-year renewable term, during which its use is restricted. R.C. 929.02(A), (C), and (D). In exchange for the use restrictions, the landowner receives benefits, including a potentially complete defense from civil nuisance actions. See *id.*

R.C. Chapter 3767, which created the statutory civil nuisance action, also created an accompanying agricultural defense. A person who is involved in agricultural activities, as defined in R.C. 519.01, outside a municipal corporation is generally exempt from liability under R.C. 3767.13(A), so long as those activities are conducted in a manner that is "in accordance with generally accepted

agricultural practices" and will not have a "substantial, adverse, effect on the public health, safety, or welfare." R.C. 3767.13(D).

The trial court determined that the Cekadas were "exempt from any liability for damages for nuisance because of R.C. 929.04." It is not entirely clear whether the Winkelmanns intended to sue the Cekadas for the common-law tort of private nuisance, or to sue pursuant to R.C. 3767.03 for violation of R.C. 3767.13(A), or both.[3] Whether the basis of the suit lies in statute or common law, R.C. 929.04 does not provide the Cekadas with a defense to a civil action for nuisance.

■ An agricultural district is a statutory classification that comes into being on a date certain, specifically the date of the filing of an application that is ultimately approved. The Cekadas filed their initial application to have their land placed into an agricultural district on October 4, 1996. The Winkelmanns filed their civil action against the Cekadas on September 25, 1996, claiming compensable injuries as of that date. Because the agricultural district into which their property was placed came into existence on October 4, 1996, it is impossible for the Cekadas to establish that their "agricultural activities [prior to September 25, 1996] were conducted within an agricultural district." Because the Cekadas cannot satisfy the first requirement for exemption from a civil nuisance suit by virtue of R.C. 929.04, and because the four requirements are conjunctive, the statute does not protect the Cekadas from suit for any injuries caused by actions that occurred prior to October 4, 1996.[4]

■ The Cekadas also asserted R.C. 3767.13(D) as a defense. R.C. 3767.13(D) does not provide a general defense to civil nuisance suits; rather, it provides a defense solely against a nuisance suit brought pursuant to statute, regulation, or ordinance. Although the authority for the Winkelmanns' suit is not entirely clear, it appears that it was a private nuisance action at common law rather than an action brought pursuant to R.C. 3767.03 for a violation of R.C. 3767.13(A). Specifically, (1) their complaint is consistent with one brought solely on the basis of the common-law tort of private nuisance; (2) they have not claimed, either below or on appeal, that their action was brought pursuant to R.C. 3767.03; (3) they may only properly bring suit pursuant to 3767.03 in the name of

---

3. The Winkelmanns did not cite statutory authority for their complaint. Without distinguishing between a common-law claim and a statutory nuisance action, the Cekadas contended that they were protected from suit by virtue of R.C. 3767.13(D). The Winkelmanns responded to the substance of the statutory defense, whether or not the Cekadas' activities were agricultural, without clarifying the nature of their suit.

4. Because the issue is not essential to the outcome of this review, we do not determine whether R.C. 929.04 provides protection from suit for injuries caused by their activities on or after October 4, 1996.

the state, on their relation; and (4) there is no evidence that they posted the bond that is required of a private individual suing pursuant to R.C. 3767.03. R.C. 3767.13(D) provides no defense to a common-law private nuisance action.

Assuming, *arguendo*, that the Winkelmanns intended their action to be a statutory one, there are still genuine issues as to the material facts that might establish the agricultural defense. Agricultural activities include "the processing, drying, storage, and marketing of agricultural products when those activities are conducted in conjunction with, *but are secondary to,* such husbandry or production." (Emphasis added.) R.C. 519.01. The Winkelmanns asserted, by affidavit, that the bulk of the nursery stock the Cekadas sell is purchased and resold essentially without improvement. In addition to their personal observations, they point to two sales tax exemption certificates that list the Cekadas' activity as "[r]ewholesale," and which certify that the Cekadas purchase items "[f]or resale in the form in which the same is, or is to be, received."

In contrast, the Cekadas asserted, also by affidavit, that they believe their use of their property to be agricultural. They also submitted the affidavit of a landscape designer and horticultural expert who stated that "[m]uch of [the Cekadas'] nursery stock is brought to their nursery at various stages of development, and is finished and made ready for replanting while at the nursery." His statement was based on "telephone and personal interviews with Mario Cekada." In his affidavit, Mario Cekada recited a mixture of activities that take place on the property. Some of those activities are unquestionably agricultural in nature, and others are agricultural only when they take place secondarily to other activities.

The evidence that the Cekadas submitted in connection with their motion for summary judgment is not sufficient to determine the portion of their business that is production and sale of homegrown stock as opposed to portion that is the marketing of stock purchased for direct resale. Resolving the disputed issue in favor of the nonmovant, as we must in reviewing a grant of summary judgment, it is clear that reasonable minds could come to the conclusion that the Cekadas' storage and marketing of agricultural products is their primary activity, rather than an activity that is secondary to their production of nursery stock. Cf. *Temple v. Wean United, Inc.* (1977), 50 Ohio St.2d 317, 327, 4 O.O.3d 466, 471–472, 364 N.E.2d 267, 273–274. If storage and marketing were their primary activities, the Cekadas' activities were not agricultural. In that event, assuming the Winkelmanns' suit was statutory, the Cekadas were not entitled to summary judgment, because R.C. 3767.13(D) provides only a defense for activities that are agricultural.

The only bases the Cekadas asserted for summary judgment were that their activities were protected by the action of R.C. 929.04 or R.C. 3767.13(D).

Summary judgment was granted in favor of the Cekadas pursuant to R.C. 929.04, on the basis that their activities were agricultural and took place in an agricultural district. They were not entitled to summary judgment on that basis, nor were they entitled to it on the basis of R.C. 3767.13(D), because the statutory defense does not apply to a common-law nuisance action. Even if the action is construed as statutory, the existence of the defense depends on facts that are genuinely disputed.

The Cekadas have conceded that in the absence of a statutory defense, there are genuine issues of material fact with regard to whether their activities constituted a private nuisance. The recitation of facts above indicates disputes about the impact of the Cekadas' activities on the Winkelmanns, whether the activities were agricultural in nature, and whether the Winkelmanns moved to the "nuisance" or whether the "nuisance" was created next door after they had established their residence there. In a motion to bifurcate the trial, the Cekadas agreed that "the Plaintiffs have a right to a jury trial on the question of nuisance if the claim for nuisance is not barred by statute." The Cekadas were not entitled to summary judgment based upon their statutory defense. Nor were they entitled to summary judgment on the ultimate issue of nuisance.

The first assignment of error is sustained.

### B.  Declaratory Judgment

The trial court granted the Cekadas' motion for summary judgment on the request for a declaratory judgment because "the Defendants' activities are agricultural."[5] As noted above, there are unresolved genuine issues of material fact. Some of these are essential to a determination of whether or not the Cekadas' use of their property was agricultural, and on that basis the grant of summary judgment in the Cekadas' favor was incorrect.

The Winkelmanns' second assignment of error is sustained.[6]

---

5. The trial court characterized its decision on this issue as one on "injunctive relief." The relevant portion of the Winkelmanns' complaint contained a two-part request. The initial request was for a "finding as to whether or not the Defendants' have an 'agricultural' exemption to the rural residential zoning code[.]" This is a request for declaratory judgment, as is also indicated by the explicit heading on their complaint. In addition, depending on the outcome of this request for a declaration, the Winkelmanns asked that the Township be joined as a party and requested damages and injunctive relief. In denying the ultimate relief requested, the trial court also implicitly denied the initial request for a declaratory judgment on which the further request for damages and injunctive relief was premised.

6. In sustaining this assignment of error, this court has not reviewed, and makes no judgment about, the Winkelmanns' request that the trial court join "the Township of Brunswick Hills, if Defendants do not have cover of an 'agricultural' exemption."

### III

The Winkelmanns' first assignment of error is sustained because the Cekadas' property was not in an agricultural district at the time the activities complained of took place, making the defense to a civil nuisance action unavailable. In addition, there are genuine issues of material fact as to whether the activities meet the statutory definition of agricultural, making any defense pursuant to R.C. 3767.13(D) unavailable as a basis for summary judgment. Because the summary judgment on the request for a declaratory judgment was premised on the activity being agricultural, and there are genuine issues of material fact as to whether the activities were agricultural, the Winkelmanns' second assignment of error is sustained. The judgment is reversed, and the cause remanded for further action consistent with this opinion.

*Judgment reversed,*
*and cause remanded.*

SLABY and BATCHELDER, JJ., concur.