**DANIEL et al., Appellants,**

v.

**FISONS CORPORATION, Appellee, et al.**

[Cite as *Daniel v. Fisons Corp.* (2000), 138 Ohio App.3d 104.]

Court of Appeals of Ohio,
First District, Hamilton County.

No. C–990643.

Decided May 26, 2000.

*Santen & Hughes, William E. Santen, Jr.,* and *Edward E. Santen,* for appellants.

*Rendigs, Fry, Kiely & Dennis L.L.P., David Winchester Peck* and *Felix Gora;* and *McDermott, Will & Emery* and *Peter Resnik,* for appellee.

*Per Curiam.*

Raising two assignments of error, plaintiffs-appellants Douglas and Sandy Daniel appeal from the order of the Hamilton County Court of Common Pleas granting summary judgment to defendant-appellee Fisons Corporation on the products-liability claims that they had initiated on behalf of their daughter Stacey.

## I. FACTS AND PROCEEDINGS

On April 16, 1981, three-year-old Stacey Daniel was admitted to Children's Hospital Medical Center with a high fever and labored breathing. Doctors diagnosed Stacey as having pneumonia and administered both an antibiotic and Somophyllin Oral Liquid, a theophylline-based drug manufactured by Fisons that was intended to ease her breathing.[1] Fisons's package insert for the drug

---

1. Prior to receiving Fisons's oral theophylline, Stacey had received intravenous theophylline that was not manufactured by Fisons.

informed doctors that theophylline levels above the therapeutic-serum range of 10 mcg/ml to 20 mcg/ml might produce toxic effects such as nausea, vomiting, diarrhea, or even seizures; that adverse reactions to theophylline increased when serum levels exceeded 20 mcg/ml; that the great variation from patient to patient in theophylline metabolism required individualized dosing and monitoring of serum-theophylline levels; that prolonged high fever might reduce the rate of theophylline elimination; that no patient was to be maintained on any dosage that was not tolerated; and that, even absent adverse reactions, serum-theophylline levels in excess of the therapeutic range required a ten-percent reduction in dosage.

Despite the treatment she was receiving, Stacey remained extremely ill after several days of hospitalization; she continued to run a high fever, and she also began vomiting and having diarrhea. At the time, doctors noted that her pneumonia was most likely viral in nature. In addition, the serum-theophylline level in her blood began to fluctuate greatly and, on several occasions, exceeded the therapeutic range. Despite this, her doctors continued to treat her with theophylline. Then, five days into her treatment, Stacey suffered a prolonged seizure that caused irreversible brain damage. As a result of the seizure, Stacey, who is now an adult, is incapable of living independently.

In 1998, Stacey's parents filed a complaint alleging that Stacey's seizure and resulting injuries were caused by toxic levels of theophylline in her blood. Although the Daniels' complaint initially included medical-malpractice claims against Stacey's pediatricians and Children's Hospital, as well as products-liability claims against Fisons and two other manufacturers of intravenous theophylline, the other drug companies were eventually dismissed from the action, and the medical-malpractice claims against the doctors and the hospital were settled. Thereafter, Fisons, the only remaining defendant, moved for summary judgment on the two products-liability claims asserted against it by the Daniels.[2] After hearing arguments, the trial court granted Fisons's motion on the following grounds: (1) Fisons was entitled to summary judgment on the Daniels' failure-to-warn claim given that the warnings contained in Fisons's package insert were adequate as a matter of law, and that even if the Daniels had provided sufficient evidence to raise a genuine issue as to the adequacy of the warnings, they had failed to demonstrate that the addition of a warning regarding viral illness would have altered the doctors' course of treatment; and (2) Fisons was entitled to summary judgment on the Daniels' claim for punitive damages

---

**2.** The complaint also included other claims against Fisons that are not relevant to this appeal, as the Daniels do not challenge the trial court's entry of summary judgment on them.

given the absence of any evidence that Fisons withheld information from, or made misrepresentations to, the FDA.

In this timely appeal of the trial court's judgment, the Daniels bring two assignment of error. In these assignments, they challenge the trial court's granting of summary judgment in favor of Fisons on their products-liability claims for (1) failure-to-warn and (2) punitive damages pursuant to R.C. 2307.80.

## II. SUMMARY–JUDGMENT STANDARD

■ Summary judgment is a procedural device to terminate litigation and to avoid a formal trial where there is nothing to try. It must be awarded with caution by resolving doubt and construing evidence against the moving party.[3] Summary judgment shall be granted only if the court, upon viewing the inferences to be drawn from the underlying facts set forth in the pleadings, depositions, answers to interrogatories, written admissions, and affidavits in a light most favorable to the party opposing the motion, determines that (1) no genuine issue of material fact remains to be litigated; (2) the moving party is entitled to judgment as a matter of law; and (3) it appears from the evidence that reasonable minds can come to but one conclusion, and that conclusion is adverse to the party opposing the motion.[4] In reviewing the propriety of summary judgment, an appellate court independently examines the record to determine whether the trial court was entitled to enter judgment as a matter of law. Accordingly, we afford no deference to the trial court's decision in answering this legal question.[5]

## III. ASSIGNMENTS OF ERROR

In their first assignment of error, the Daniels assert that the trial court erred in entering summary judgment on their products-liability claim for failure to warn. While the Daniels concede that Fisons's theophylline package insert warned doctors that high prolonged fever might reduce the rate at which theophylline was eliminated from the blood, they assert that Fisons' failure to include a warning relative to a viral infection's effect on theophylline clearance rendered the drug defective and unreasonably dangerous.

■ Although many prescription drugs such as theophylline are incapable of being made completely safe for their intended use, these drugs are not consid-

3. *Norris v. Ohio Std. Oil Co.* (1982), 70 Ohio St.2d 1, 2, 24 O.O.3d 1, 1–2, 433 N.E.2d 615, 616.

4. Civ.R 56(C); *Temple v. Wean United, Inc.* (1977), 50 Ohio St.2d 317, 327, 4 O.O.3d 466, 471–472, 364 N.E.2d 267, 274.

5. *Morehead v. Conley* (1991), 75 Ohio App.3d 409, 411, 599 N.E.2d 786.

ered defective or unreasonably dangerous as a matter of law so long as their manufacturer provides proper warnings and instructions to the prescribing doctor.[6]  However, a manufacturer may be held strictly liable for injuries caused by a drug where the manufacturer has failed to provide an adequate warning and where it is proven that (1) the lack of adequate warning was a proximate cause of the plaintiff's ingestion of the drug, and (2) that the ingestion of the drug was a proximate cause of the plaintiff's injury.[7]  In satisfying the first branch of the proximate-cause burden, a plaintiff is aided by a rebuttable presumption that the failure to adequately warn was a proximate cause of the plaintiff's ingestion of the drug.[8]

■ A warning is said to be "adequate" where, under all the circumstances, it reasonably discloses to the medical professional all known or reasonably discoverable risks inherent in the use of the drug.[9]  Moreover, a reasonable warning not only conveys a fair indication of the nature of the dangers involved, but also warns with the degree of intensity demanded by the nature of the risk.[10] Finally, although a causal relationship between use of a product and resulting injury may not be clearly established, a manufacturer may not ignore or discount scientific or medical evidence tending to show that a certain danger is associated with use of the drug solely because the manufacturer finds such information unconvincing.[11]

■ The Daniels assert that, notwithstanding Fisons's warning regarding fever's reduction of theophylline clearance, Fisons's failure to include a warning regarding the degree to which a viral infection might reduce theophylline clearance rendered the package-insert warning inadequate.  In support of this assertion, the Daniels put forth the opinion of their medical expert, Dr. W. Leigh Thompson, that Fisons's warning was inadequate given that it failed to warn of "the variability of theophylline kinetics in children with viral infections or the potential of doubling or more of serum theophylline concentrations during such infections."  Viewing this evidence in the light most favorable to the Daniels, as

6.  See R.C. 2307.75(D) and 2307.76(C);  *Seley v. G.D. Searle & Co.* (1981), 67 Ohio St.2d 192, 21 O.O.3d 121, 423 N.E.2d 831, paragraph one of the syllabus.

7.  *Seley, supra,* at paragraph three of the syllabus.

8.  *Seley, supra,* at paragraph four of the syllabus.

9.  *Seley, supra,* 67 Ohio St.2d at 198, 21 O.O.3d at 124–125, 423 N.E.2d at 837.

10.  *Id.*

11.  *Id.*

we must, we conclude that it raises a genuine issue of material fact as to whether Fisons's failure to include a viral warning rendered the existing warning inadequate.

■ Because we conclude that the Daniels presented sufficient evidence to create a genuine issue of material fact regarding the adequacy of the warning, they are entitled to the benefit of the rebuttable presumption that the allegedly inadequate warning was a proximate cause of Stacey's theophylline ingestion. Given the facts of this case, however, we are led to conclude that Fisons rebutted this presumption as a matter of law.

The record demonstrates that Fisons's package insert cautioned that symptoms of toxicity included vomiting and diarrhea and that no patient was to be maintained on any dosage that was not tolerated. Moreover, the package insert specifically instructed that a theophylline dosage was to be reduced by ten percent when a patient's serum level exceeded the therapeutic range, regardless of whether adverse reactions had become manifest. Despite these instructions, and despite Stacey's manifestation of signs of toxicity, Stacey's doctors maintained her on theophylline. Furthermore, her doctors failed to reduce her dosage even when her serum-theophylline level exceeded the therapeutic range and reached as high as 25 mcg/ml.

Given that Fisons's package insert cautioned that Stacey's fever presented an increased risk of toxicity, and that, despite this, her doctors completely failed to heed the package insert's clear instruction to reduce the dosage, it cannot be said that the addition of a viral warning would have had any impact on the determination to continue administering theophylline to Stacey. Or, put another way, the evidence that the doctors ignored the dosaging instructions served to defeat the presumption that the allegedly inadequate warning was a proximate cause of Stacey's ingestion of theophylline. We conclude, therefore, that the trial court properly entered summary judgment on the Daniels' failure-to-warn claim. Accordingly, we overrule the first assignment of error.

In light of our conclusion that the Daniels' failure-to-warn claim failed as a matter of law, there is no basis to support their claim for statutory punitive damages. Accordingly, we overrule their second assignment of error, which challenges the trial court's entry of summary judgment in favor of Fisons on that claim.

## IV. CONCLUSION

For the reasons stated above, we affirm the trial court's judgment.

*Judgment affirmed.*

GORMAN, P.J., SUNDERMANN, and WINKLER, JJ.