**William D. WEBB, II., Plaintiff–Appellant,**

v.

**S.R.S. LIQUIDATION CO.; INC., Household Commercial Financial Services, Inc.; Merrill Lynch Capital Corp.; Michael J. Hammond; John L. Kolleng; and Michael Eber, Defendants–Appellees.**

No. 02–4009.

United States Court of Appeals, Sixth Circuit.

March 8, 2004.

Raymond J. Costanzo, Costanzo & Lazzaro, Lakewood, OH, for Plaintiff–Appellant.

Thomas M. Wilson, Comstock, Springer & Wilson, Youngstown, OH, Harry W.R. Chamberlain, II, George J. Stephan, Stephan, Oringher, Richman & Theodora, Los Angeles, CA, Marcel C. Duhamel, Vorys, Sater, Seymour & Pease, James E. Stephenson, Reid, Berry, Marshall & Wargo, Cleveland, OH, Eric W. Richardson, Vorys, Sater, Seymour & Pease, Cincinnati, OH, for Defendant–Appellee.

Before: NORRIS, GILMAN, and ROGERS, Circuit Judges.

## OPINION

ALAN E. NORRIS, Circuit Judge.

Plaintiff William D. Webb, II, appeals from the district court's grant of summary judgment in favor of defendants S.R.S. Liquidation Co., Inc. ("SRS"), Household Commercial Financial Services, Inc., Merrill Lynch Capital Corp., Michael J. Hammond, John L. Kolleng, and Michael Eber. The court determined that Webb had not presented evidence sufficient to raise a genuine issue of material fact in support of his claim that SRS was strictly liable under Ohio law for injuries caused by a diving board which he alleged was defectively designed. Accordingly, the court granted summary judgment in favor of SRS. Because the district court applied the correct standard of liability under Ohio law and correctly determined that Webb had not raised any genuine issue of material fact under that standard, we affirm.

### I.

In 1992, Webb was gravely injured after diving into a pool from a diving board that had been manufactured by SRS. The diving board had been purchased without its original packaging from a salvage yard and had been installed onto the pool fifteen years after the pool was originally constructed. On the underside of the board, SRS had printed a specification sheet detailing the dimensions of pools with which the board was to be used. The installer of the board never relied upon the sheet and Webb never saw it.

Webb brought suit in an Ohio court against the owners of the pool property, the installers of the pool, the installers of the diving board, and the manufacturers of the pool and board. After several defendants settled and others were granted summary judgment, Webb proceeded to trial against SRS, asserting implied war-

ranty claims and tort claims sounding in negligence and strict liability. At the close of Webb's case, but before the jury could render a verdict, the trial court entered a directed verdict in favor of SRS on all claims. Webb appealed.

The state appellate court affirmed the trial court's ruling in all respects but one: it determined that Webb had presented sufficient evidence to withstand the entry of a directed verdict on his claim of defective design. The appellate court reasoned as follows:

> Construing the evidence in a light most favorable to Webb, we find that the trial court improperly directed a verdict in favor of Manufacturer. The evidence was uncontradicted that there was no defect in the design of the diving board itself. The board, however, was designed to be used in a "pool/board system," specifically, a Type III hopper-bottom pool. At trial, one of Webb's experts testified that when Manufacturer's board is used with the Type III hopper-bottom pool, the resulting "pool/board system" does not allow a person physically similar to Webb to safely dive into the pool. The Type III hopper-bottom pool required a minimum depth of eight feet and that the upslope be a minimum of seven and one half feet from the plummet (the point in the pool just below the edge of the diving board). The expert testified that a minimum depth of ten to twelve feet was required for a safe dive, and that the distance between the beginning of the upslope and the plummet should be at least sixteen feet. The expert also testified that the shortcomings of the Type III hopper-bottom pool minimum standards proximately caused Webb's injury. Thus, sufficient evidence, whether accepted by the trier of fact or not, was adduced that the "pool/board system" was defectively designed, and that Man-

ufacturer's board was intended to be incorporated in a defectively designed system. Accordingly, the trial court should have denied Manufacturer's motion for a directed verdict as to the design defect count.

*Webb v. Smith*, 1998 WL 801944, at *4 (Ohio App. 9 Dist. Nov.18, 1998). The state appellate court then remanded the case to the trial court for proceedings consistent with its opinion.

On remand, however, Webb chose not to pursue the case in state court. Instead, he obtained a voluntary dismissal without prejudice and re-filed his design defect action against SRS in federal court. Webb also filed a number of dependent claims under theories of derivative liability against defendants Household Commercial Financial Services, Inc., Merrill Lynch Capital Corp., Michael J. Hammond, John L. Kolleng, and Michael Eber.

Once in district court, SRS filed a motion for summary judgment. In considering SRS's motion, the district court applied Ohio's "component part manufacturer rule" to Webb's design defect claim and concluded that, under that rule, he had failed to raise a genuine issue of material fact as to whether SRS's conduct made it liable for his injuries:

> Defendant S.R.S. argues that it is not liable for the defective design of the swimming pool/diving board system because it manufactured only a component part of that system. Therefore, Defendant S.R.S. claims that because it manufactured only the diving board and did not participate in the design of the system itself, the Ohio component part manufacturer rule protects S.R.S. from liability.
> Under the Ohio component part manufacturer rule, a manufacturer of a component part is not liable for a defective system of which its component is a part, unless the plaintiff can prove one of two

conditions. The component part manufacturer is not liable unless (1) the component part is itself defective or (2) the manufacturer substantially participated in the integration of the component part into the system and the component part proximately caused the plaintiff's injuries....

Plaintiff Webb concedes that the diving board itself is not defective. Therefore, Webb cannot satisfy the first method of establishing component part manufacturer liability.

For Defendant S.R.S. to be liable for Webb's injuries, therefore, Webb must show that S.R.S. substantially participated in the integration of the component part into the system and that the part proximately caused Webb's injuries.

The district court concluded that Webb had not produced any evidence indicating that SRS had substantially participated in the integration of its board with the pool. On that basis, the court granted summary judgment in favor of SRS and terminated the action with regard to all defendants.

## II.

On appeal, Webb argues that the district court erred in applying the "component part manufacturer rule." He first argues that the district court was bound by the pronouncements of the Ohio appellate court in this matter, and that those pronouncements foreclosed the application of the rule. Second, he argues that the "component part manufacturer rule" applies only to tort cases arising from a failure to warn rather than defective design cases.

Addressing Webb's first argument, we agree that the district court, sitting in diversity, was bound by the holdings of the Ohio appellate court regarding Webb's defective design claim. However, the Ohio appellate court's opinion does not address the "component part manufacturer rule."

Therefore, that opinion does not preclude the district court from applying the "component part manufacturer rule" to Webb's claim. Accordingly, Webb's first argument fails.

Webb's second argument fails as well. The decision of the Ohio Supreme Court that adopted the "component part manufacturer rule" in failure to warn cases, *Temple v. Wean United Inc.*, 50 Ohio St.2d 317, 364 N.E.2d 267 (1977), reasoned that it would be unfair to hold component part manufacturers responsible for failing to anticipate the manner in which their products would be integrated into larger systems by third parties. *Id.* 50 Ohio St.2d at 324, 364 N.E.2d at 272. That logic applies to defective design claims as much as it does to claims alleging a failure to warn. Webb has cited no Ohio cases holding that the "component part manufacturer rule" does not apply to defective design cases. Indeed, there is some authority suggesting that the opposite is true. *See Runyon v. Briggs & Stratton Corp.*, Nos. 10987, 11185, 1989 WL 49475, at *3 (Ohio Ct.App. May 5, 1989) (unpublished) (discussing the "component part manufacturer rule" in the context of a defective design claim); *see also Kremer v. Duriron Co.*, 40 Ohio App.3d 183, 532 N.E.2d 165, 167 (Ohio Ct.App.1987), *Williams v. Morgan Adhesives Co.*, No. 13411, 1988 WL 40376, at *3 (Ohio Ct.App. Apr. 27, 1988). It appears that the district court applied the correct legal standard and properly concluded that Webb did not raise a genuine issue of material fact sufficient to meet that standard.

## III.

For the foregoing reasons, the judgment of the district court is AFFIRMED.