OPINION
{¶ 1} Appellant, Robert Augusta, appeals the decision of the Ashtabula County Court of Common Pleas awarding summary judgment to appellee, James M. Lemieux. We affirm.
 {¶ 2} Since 1988, appellant had consistently engaged in the sale and/or purchase of commercial and residential properties. Appellant testified he handled most of these transactions on his own; although he would occasionally enlist the assistance of appellee[1] (or other attorneys), he would do so only when he felt it was necessary.
 {¶ 3} In October of 1992, appellant sold a commercial property, the Mosquito Tavern, to his "best friends," Rose and James Schrecengost for monthly payments of $561.50. The Schrecengosts made timely payments until April of 1994 at which point all payments ceased. The Schrecengosts did not make a payment for nearly four years; during this time, appellant discussed the Schrecengosts' default with appellee "over five hundred times." However, appellant did not want to move forward with legal proceedings against the Schrecengosts because they were "friends" and in a bad financial position.
 {¶ 4} However, on February 9, 1998, after not receiving payments for nearly four years, appellant assigned all of his rights in the Tavern, including the liquor license and the promissory notes endorsed by the Schrecengosts, to appellee. On the same day, appellee sent a letter to the Schrecengosts regarding the assignment and his intention to recover the property. Upon receipt of the letter, Rose Schrecengost confronted appellant and urged him to stop the recovery. Ultimately, appellant instructed appellee to cease any further action against the Schrecengosts.
 {¶ 5} Notwithstanding his decision to halt proceedings, appellant still complained about the Schrecengosts failure to make payments. Despite his evident frustration, appellant continued to pay for the bar's liquor stock as well as taxes and insurance on the property. According to appellee, as time wore on, appellant became progressively more interested in filing suit and eventually asked appellee to move forward to reclaim the property pursuant to the assignment. On October 10, 2001, appellee filed a complaint in the Trumbull County Court of Common Pleas to recover the property. The Schrecengosts failed to respond and, on December 19, 2001, default judgment was entered in appellee's favor.
 {¶ 6} Although appellant asserts appellee engaged in a scheme to procure the property for himself, the record contains no evidence of this, save appellant's assertion that appellee was interested in "stealing" the property. Appellee testified he had no interest in holding onto the property for many reasons, not the least of which was his concerns regarding potential exposure to liability for the now vacant and uninsured structure. Eventually, appellant found a buyer for the property, one John Palasics. Appellee helped negotiate the sale which was scheduled to close on April 9, 2002. However, Palasics' representative conducted a title search on the property and discovered a promissory note executed on May 11, 1994, to one Tammy Neff, James Schrecengost's sister, in the amount of $51,000. As a result, the closing was delayed.
 {¶ 7} Appellant had no knowledge of the promissory note executed between Neff and the Schrecengosts. However, on November 10, 2002, Neff filed a foreclosure action against appellant, appellee, and the Schrecengosts. As a result, appellant paid $45,000 to Neff when the sale to Palasics closed. Appellant still owes Neff an additional $15,000 on the foreclosure.
 {¶ 8} On December 17, 2002, appellant filed a complaint against appellee alleging legal malpractice. Appellant amended his complaint on July 2, 2003 adding an additional allegation of conversion. Appellant's amended complaint specifically alleged appellee's representation fell below professional standards because a title search would have revealed Neff's lien. Appellant also alleged that appellee should have initiated a foreclosure action. The allegation of conversion was premised upon appellee's alleged removal of fixtures from the property. On January 16, 2004, appellee moved for summary judgment to which appellant responded on February 23, 2004. On June 9, 2004, the trial court awarded appellee summary judgment and this appeal now follows.
 {¶ 9} Appellant asserts the following assignment of error for our review:
 {¶ 10} "The trial court erred as a matter of law regarding its finding that there exists no genuine issue of material facts"
 {¶ 11} Under his sole assignment of error, appellant queries whether his affidavit and discovery deposition were sufficient to create a genuine issue of material fact for trial on his claims for legal malpractice and conversion.
 {¶ 12} Summary judgment is appropriate under Civ.R. 56(C) when (1) there is no genuine issue of material fact remaining to be litigated, (2) the moving party is entitled to judgment as a matter of law, and (3) it appears from the evidence that reasonable minds can come to but one conclusion, and viewing the evidence in favor of the nonmoving party, that conclusion favors the moving party. Temple v. Wean United,Inc. (1977), 50 Ohio St.2d 317, 327.
 {¶ 13} The moving party bears the initial burden of providing the trial court a basis for the motion and is required to identify portions of the record demonstrating the absence of material issues of fact pertaining to the non-moving party's claim. Dresher v. Burt,75 Ohio St.3d 280, *292, 1996-Ohio-107. The burden then shifts to the non-moving party to set forth specific facts that would establish a genuine issue for trial. Id. at *293. However, the non-moving party may not rest on bald allegations or denials contained in the pleadings; rather, he or she must submit evidentiary material sufficient to create a genuine dispute over material facts at issue. Id.
 {¶ 14} We review a trial court's decision to grant summary judgment de novo. Grafton v. Ohio Edison Co., 77 Ohio St.3d 102, 105, 1996-Ohio-336. As such, summary judgment proceedings afford an appellate court the unique opportunity of reviewing the evidence in the same manner as the trial court. See, Smiddy v. The Wedding Party, Inc. (1987),30 Ohio St.3d 35, 36.
 {¶ 15} In his complaint, appellant asserted that appellee negligently represented him in connection with a real estate transaction. To establish a cause of action for legal malpractice based upon negligent representation, a plaintiff must establish (1) an attorney-client relationship giving rise to a duty; (2) a breach of that duty; and (3) a causal nexus between the alleged negligent conduct and the resulting damage. Sprague v. Simon (2001), 144 Ohio App.3d 437, 441, citingKrahn v. Kinney (1989), 43 Ohio St.3d 103, 105. "Failure to prove any one of these elements entitles a defendant to summary judgment on a legal malpractice claim." Brunstetter v. Keating, 11th Dist. No. 2002-T-0057, 2003-Ohio-3270, at ¶ 13.
 {¶ 16} Here, it is uncontroverted that an attorney-client relationship existed between appellee and appellant from which a corresponding duty emanated. However, the parties possess differing views as to whether a breach of that duty occurred. First, appellant alleges appellee breached his professional duty by moving forward with an action to recover the property in question without his authorization. EC 7-8 of the Code of Professional Responsibility states, in part: "[T]he lawyer should always remember that the decision whether to forego legally available objectives or methods because of non-legal factors is ultimately for the client and not for himself." In effect, appellant alleges appellee violated his professional duty in pursuing suit against the Schrecengosts in the face of appellant's protestations to the contrary. We disagree.
 {¶ 17} Attached to appellee's motion for summary judgment is a copy of appellant's deposition. During the deposition, appellee testified that, even though appellant was troubled by the Schrecengost's failure to fulfill their payment obligations on the property, appellant did not want to "force" the Schrecengosts into paying him. Appellant testified he had discussed the Schrecengost's failure to pay over five hundred times with appellee. Nonetheless, appellant testified he was "best friends" with the Schrecengosts and did not desire to put them in an uncomfortable position. He stated:
 {¶ 18} "[h]owever financially I was, it was not killing me. I haven't only done it on this. I have a tendency to lean this way. It's my — that's my personality. It comes back and kicks me in the ass every time, but that's the way I do things. They were best friends."
 {¶ 19} Appellant additionally testified he did not desire to move to foreclose on the property.[2]
 {¶ 20} Appellee testified he thought appellant was getting "screwed" and therefore suggested appellant transfer the property to him so he could file suit to regain the property. After regaining the property, appellee would transfer the property back to appellant. According to appellee, this arrangement would allow appellant to regain possession of the property without being nominally involved in the legal proceedings.
 {¶ 21} During his deposition, appellant was cross-examined with a document identified as "Defendant's Exhibit Q." "Defendant's Exhibit Q," entitled "Assignment," stated:
 {¶ 22} "For value received, I Robert Augusta, individually and as a duly authorized officer of Mosquito Tavern[,] Inc. do hereby assign all of my right[s], title and interest in certain secured Promissory Notes dated October 8, 1992 in the amount of $17,000.00 and that note of the same date in the amount of $53,100.00 together with all of my right[s], title and interest in a certain bill of sale, mortgage, security agreement, stock pledge agreement, deeds as well as any other documents pertinent to a purchase agreement by and between the Mosquito Tavern[,] Inc. and Robert D. Augusta to James A. Schrecengost to James M. Lemieux, Assignee."
 {¶ 23} The document is dated February 9, 1998 and signed by Robert Augusta. Further, the document reflects it was signed and acknowledged in the presence of two witnesses, viz. Kimberly Wilms and Amy Mendrala; the Assignment was also duly notarized.
 {¶ 24} When asked about the document during his deposition, appellant denied any knowledge of the assignment and stated "[t]hat looks like my signature, but I did not sign this paper." Moreover, appellant attached an affidavit to his motion in opposition denying any knowledge of the assignment.
 {¶ 25} This court and indeed, this very panel, has previously held that a non-moving party may not avoid summary judgment by merely submitting a self-serving affidavit which merely contradicts the evidence offered by the moving party. Greaney v. Ohio TurnpikeCommission, 11th Dist. No. 2005-P-0012, 2005-Ohio-5284, at ¶ 16. Specifically,
 {¶ 26} "[t]his rule is based upon judicial economy: Permitting a nonmoving party to avoid summary judgment by asserting nothing more than `bald contradictions of the evidence offered by the moving party' would necessarily abrogate the utility of the summary judgment exercise.C.R. Withem Enterprises v. Maley, 5th Dist. No. 01Ca 54, 2002-Ohio-5056, at ¶ 24[.] Courts would be unable to use Civ.R. 56 as a means of assessing the merits of a claim at an early stage of the litigation and [which would unnecessarily] dilate the civil process. Belknap [v.Vigorito, 11th Dist. No. 2003-T-0147, 2004-Ohio-7232, at ¶ 27], citing[,] C.R. Withem Enterprises, supra." Greaney, supra.
 {¶ 27} Here, appellant's deposition testimony and subsequent affidavit are self-serving and inadequate to meet his "reciprocal burden * * * to set forth specific facts showing that there is a genuine issue for trial * * *." Dresher, supra, at 293. Appellant's argument is premised upon the allegation that appellee did not have his authorization to move forward with the suit against the Schrecengosts and, as such, appellee breached his professional duty. Appellee's motion for summary judgment contained specific documentary evidence illustrating appellant assigned his interests in the bar property. This assignment demonstrates appellant transferred his interests in the property and the promissory notes to appellee. In our view, the assignment provides affirmative evidence of appellant's ratification of appellee's course of conduct.
 {¶ 28} Furthermore, and notwithstanding this ratification, appellee, as the assignee, did not technically need appellant's authorization to move forward: Once appellant assigned his interests over to appellee, appellee was free to move forward against the Schrecengosts irrespective of appellee's wishes. Accordingly, there is no genuine issue of material fact regarding whether appellee breached his professional duty by failing to obtain appellant's authorization.
 {¶ 29} Next, appellant alleges, even had he authorized appellee to recover the property, appellee had an obligation to perform a title search. In support, appellant attached an affidavit signed by expert Thomas G. Carey, Jr., Esq., to his motion in opposition to appellee's motion for summary judgment. The affidavit attests, in relevant part:
 {¶ 30} "In acting as attorney on behalf of Robert Augusta, James Lemieux fell below the acceptable standards of care in failing to advise his client of the necessity of a title search prior to recovering title to the real estate in this case. A title search would have revealed the existence of the intervening liens."
 {¶ 31} Neither appellant nor Attorney Carey support their position with substantive legal authority. Moreover, there is no record evidence that appellant specifically authorized appellee to conduct or pay for a title search. Without appellant's consent, appellee did not have actual authority to move forward with the search. However, assuming arguendo, appellant had authorized appellee to conduct a title search and, in failing to do so, he breached his professional duty, we still hold appellant has failed to establish a causal connection between the alleged breach and the claimed damages or loss.[3]Brunstetter, supra, at ¶ 23. To prove damages under a theory of legal malpractice, a plaintiff must demonstrate that, but for the attorney's negligence, he would have prevailed in the original action. Id., citingJunke v. Friedman (Dec. 26, 1996), 8th Dist. No. 69883, 1996 Ohio App. LEXIS 5826, *7.
 {¶ 32} Appellant's amended complaint asserts: "[a]s a result of the actions of Defendant [Lemieux], Plaintiff received property with an outstanding lien for $51,000.00 remaining on the property from a secured creditor which clouded plaintiff's title to the property." However, appellant sought damages "in a sum in excess of Twenty-Five Thousand Dollars ($25,000.00) with a sum certain to be determined at trial."
 {¶ 33} If we treat appellant's former assertion as a claim for damages in the amount of $51,000, he cannot demonstrate that, but for appellee's failure to perform a title search, the $51,000 lien on the property would not exist. Of course, appellant may claim he would not have went forward with the property reclamation had he been aware of the lien; however, such an assertion is speculative and, more importantly, was not raised on appeal. Furthermore, if we treat appellant's prayer for damages "in excess" of $25,000 as the amount for which he holds appellee responsible, it is unclear how absent appellee's failure to perform a title search, appellant would have had "in excess" of $25,000 reduced from the lien.
 {¶ 34} In sum, appellant fails to draw a coherent causal connection between appellee's alleged breach and the damages he alleges in his complaint. First, the lien was on the property irrespective of appellee's purported breach; had appellee performed a title search, appellant would have known of the lien earlier, but appellant's awareness has no impact on the lien amount or its validity. In order to set forth a cognizable claim for legal malpractice, not only does a plaintiff need to show a breach of duty and causation, but a plaintiff must also demonstrate damages. Here, even if we agree that appellant is capable of satisfying the first two prongs of the test, he fails, as a matter of law, to satisfy the third. Further, appellant's prayer for damages in excess of $25,000 is fundamentally disconnected from any facts in evidence; in short, it appears the "in excess" $25,000 amount is simply a random amount appellant feels will "justly" compensate him. In any event, appellant fails to demonstrate he suffered damages as a direct and proximate result of appellee's alleged breach of duty.
 {¶ 35} Appellant's sole assignment of error is not well taken.
 {¶ 36} For the reasons set forth above, appellant's sole assignment of error is overruled and the judgment of the Ashtabula Court of Common Pleas is hereby affirmed.
WILLIAM M. O'NEILL, J., DIANE V. GRENDELL, J., concur.
[1] In 1988, an attorney-client relationship commenced between appellant and appellee. Throughout their relationship, appellee represented appellant in multiple matters of both a civil and criminal dimension.
[2] Aware of appellant's interests, appellee was acting pursuantto his client's wishes in not filing a foreclosure action. Accordingly, appellee breached no professional duty in failing to file this action. To the contrary, appellee was acting at the behest of appellant and within the scope of his professional obligations in not doing so.
[3] Appellant's appellate brief contains no argument on the issue of causation or damages; however, for purposes of a comprehensive analysis, we shall nevertheless address the matter.