JOURNAL ENTRY AND OPINION *Page 2 
{¶ 1} Defendants-appellants, Marco Rossi, Giuseppe Miceli, and Amicorum, d/b/a/ Ponte Vecchio Ristorante, appeal from the trial court's judgment finding that plaintiff-appellee, Maria Donofrio, is the owner of 756 shares of common stock in Amicorum. For the reasons that follow, we affirm.
 {¶ 2} The record reflects the following. In 2003, Donofrio's father, Pasquale Donofrio ("Pasquale"), was approached by the partners of the Stonebridge Center LLC regarding the opening of a "top shelf" Italian restaurant in the Flats area of Cleveland, Ohio. The Stonebridge developers apparently approached Pasquale because of his knowledge of the restaurant business, as an owner and founder of the Panini's Restaurant franchise. Subsequently, Pasquale approached Rossi, a Cleveland area chef, about Stonebridge's proposal.
 {¶ 3} A deal was put together whereby Stonebridge agreed to finance the capital improvements to the restaurant in the amount of $500,000. Stonebridge would own the restaurant and then lease it to Amicorum, a corporation to be formed by Pasquale, Rossi, and Miceli, who had also agreed to invest in the project.
 {¶ 4} Pasquale, Rossi and Miceli agreed that Rossi would receive 30% of the shares in Amicorum in exchange for his services in operating the restaurant, Miceli would receive 19.6% of the shares in exchange for contributing $92,000 in working capital, and Pasquale would receive 50.4% of the shares in Amicorum in exchange *Page 3 
for bringing the deal to Rossi. Rossi testified in his deposition that he understood that Pasquale wanted his shares of stock put in Donofrio's name.
 {¶ 5} On July 26, 2004, Rossi, Miceli and Donofrio entered into a Close Corporation Agreement. The agreement provided that Amicorum, Inc. would do business as Ponte Vecchio Ristorante serving "fine cuisine and liquor" (Articles 1.2 and 1.4 of the agreement); the shareholders would be Rossi, holding 450 shares or 30% of the issued stock, Donofrio, holding 756 shares or 50.4% of the issued stock, and Miceli, holding 294 shares or 19.6% of the issue stock (Article 1.5 of the agreement); Rossi would be President and Secretary of the corporation; Miceli would be Vice-President and Treasurer (Article 4.1); and profit and loss would be allocated among the shareholders "in proportion to their Shares" (Article 5.2).
 {¶ 6} On August 1, 2004, each shareholder was issued a stock certificate evidencing their respective stock ownership, although the certificates were never signed.
 {¶ 7} Thereafter, Amicorum filed a Form 2553 Subchapter S Election with the Internal Revenue Service. The IRS election specified that Donofrio owned 756 shares of stock, Rossi owned 450, and Miceli owned 294.
 {¶ 8} Ponte Vecchio Ristorante began operation in September 2004. Upon conclusion of the calendar year 2004, and in accordance with Article 82 of the Close Corporation Agreement, Amicorum issued Donofrio an IRS Schedule K-1 reflecting her shareholder's share of income, deductions and credits. *Page 4 
 {¶ 9} As part of the arrangement with Stonebridge, its State of Ohio liquor permit was to be transferred to Amicorum. In order to effect the liquor permit transfer, on February 28, 2005, Rossi signed and forwarded to the Ohio Department of Liquor Control a document entitled "Officer/Shareholders Disclosure Form" in which he attested that he, Miceli and Donofrio were shareholders in Amicorum.
 {¶ 10} Rossi testified that shortly after this, he and Miceli learned that Pasquale had lied to Stonebridge personnel by telling them that he had invested $60,000 in Ponte Vecchio, when, in fact, he had put no money into the project. Rossi testified that he and Miceli felt betrayed and, further, "that because of the betray[al], we did not want to have any partner rather than me and Mr. Miceli."
 {¶ 11} Thereafter, Amicorum's attorney prepared a Stock Purchase agreement whereby Rossi proposed to purchase Donofrio's 756 shares of stock for $150,000. Pasquale never made Donofrio aware of the offer and, without her knowledge, contacted Rossi and rejected the $150,000.
 {¶ 12} In May 2005, Pasquale was sentenced to prison for tax evasion relating to the Panini's Bar and Grill in the Flats. Around this time, Pasquale approached Rossi and Miceli and indicated that he would accept the $150,000 offer if they agreed to make payments of $3,000 per month in cash. Rossi and Miceli rejected this counteroffer.
 {¶ 13} On June 22, 2005, Donofrio issued a check in the amount of $756 to Amicorum after unilaterally determining that was sufficient consideration for her *Page 5 
50.4% stock ownership. On July 6, 2005, Donofrio issued notice that she was calling a special shareholders' meeting for July 15, 2005. Rossi and Miceli rejected Donofrio's call for a meeting and returned her money with a letter indicating that she was not a shareholder in Amicorum.
 {¶ 14} In August 2005, Donofrio filed her complaint for declaratory judgment seeking a declaration regarding her rights as a shareholder in Amicorum. The parties filed cross motions for summary judgment. The trial court granted Donofrio's motion and declared that she was the owner of 756 shares, or 50.4%, of the common stock of Amicorum. The court denied appellants' motion.
 {¶ 15} Appellants now appeal. They argue that the trial court erred in denying their motion for summary judgment and in granting Donofrio's motion.
 {¶ 16} Civ.R. 56(C) provides that summary judgment is appropriate when: 1) there is no genuine issue of material fact, 2) the moving party is entitled to judgment as a matter of law, and 3) after construing the evidence most favorably for the party against whom the motion is made, reasonable minds can reach only a conclusion that is adverse to the nonmoving party. Zivich v. Mentor Soccer Club, Inc. (1998), 82 Ohio St.3d 367,3469-370, 1998-Ohio-389; Temple v. Wean United, Inc. (1977),50 Ohio St.2d 317, 327. The moving party bears the initial burden of informing the court of the basis of the motion and identifying those portions of the record which support the requested judgment. Vahila v.Hall, 77 Ohio St.3d 421, 1997-Ohio-259. If the moving party discharges its initial burden, the party against whom the motion is *Page 6 
made then bears a reciprocal burden of specificity to oppose the motion. Id. See, also, Mitseff v. Wheeler (1998), 38 Ohio St.3d 112. We review the trial court's judgment de novo using the same standard that the trial court applies under Civ.R. 56(C). Grafton v. Ohio Edison Co.
(1996), 77 Ohio St.3d 102, 105.
 {¶ 17} Appellants argue first that Donofrio is not a shareholder because she was never issued a written stock subscription agreement. This argument fails, however, because Amicorum did not issue a stock subscription agreement to any of the three shareholders. Appellants contend that Rossi and Miceli are the only shareholders of Amicorum, yet if their argument carried any weight, then Amicorum would have no shareholders.
 {¶ 18} Appellants next contend that Donofrio is not a shareholder because she did not give any consideration to the corporation for her shares.
 {¶ 19} R.C. 1701.18(A)(1) provides that "[c]onsideration for shares may include cash, property, services rendered, a promissory note, or any other binding obligation to contribute cash or property or to perform services; the provision of any other benefit to the corporation; or any combination of these."
 {¶ 20} Rossi testified in his deposition that Pasquale was to receive over 50% of the shares in Amicorum because he "brought the deal to the table." Appellants contend, however, that because consideration for shares must consist of money, other property or services rendered to the corporation itself, Pasquale's action in *Page 7 
"bringing the deal" to Rossi was insufficient consideration, as Rossi was an individual. We disagree.
 {¶ 21} Pasquale paid for his shares for services rendered to the corporation by approaching Rossi about Stonebridge's proposal for a restaurant in their development. Quite simply, without Pasquale's efforts, Amicorum would not have been formed.
 {¶ 22} Services rendered to a corporation prior to incorporation can be deemed consideration in exchange for the issuance of common stock. InPerfection Graphics, Inc. v. Sheehan (Mar. 3, 1995), Geauga App. No. 93-G-1776, for example, the Eleventh District Court of Appeals found that a board of directors consisting of a father and his daughter had the power, as a close corporation, to accept the father's preincorporation services in lieu of cash as partial consideration for the father's shares of stock in the newly formed corporation. (The court found, however, that there was insufficient evidence to indicate that the board had ratified the alleged agreement.) See, also, Burge v.Frey (1982), 545 F.Supp. 1160, 1171 ("[P]reincorporation services may be valid consideration for the issuance of common stock if the underlying agreement is adopted by the corporation.")
 {¶ 23} Here, the facts and undisputed corporate documentation filed by Amicorum clearly demonstrate that Amicorum ratified the agreement to issue 756 shares of common stock to Donofrio in exchange for Pasquale's preincorporation services. Rossi testified in his deposition that he, Miceli, and Pasquale agreed to *Page 8 
put 756 shares of stock in Donofrio's name because Pasquale "brought the deal to the table." In addition, Amicorum filed numerous corporate documents in which it specifically identified Donofrio's stock ownership.
 {¶ 24} "In determining the legal and beneficial ownership of common stock, the trial court, as finder of facts, may consider as factors payment of dividends by the corporation, statement of ownership onreports filed by the corporation with government or regulatoryagencies, payment by the corporation of salaries and bonuses to the disputed shareholder, and the business and family relationships of the disputed shareholder with other shareholders, officers and directors, and with the corporation itself." McBride, Executrix v. The Norris Bros.Co. (Apr. 23, 1976), Cuyahoga App. No. 34506. (Emphasis added.)
 {¶ 25} The corporate documents filed on behalf of Amicorum clearly demonstrate that for nearly a year after Amicorum's formation, Rossi and Miceli considered Donofrio a shareholder. They only changed their minds about her status when they found out that Pasquale had misrepresented to the Stonebridge developers that he had contributed money to the project.
 {¶ 26} Finally, we reject appellants' argument that Donofrio is not entitled to stock ownership because the shares placed in her name were obtained through fraud. Appellants contend that Pasquale concealed the fact that he was being pursued by the IRS for felony tax evasion in connection with his operation of Panini's and that this information was material to the transaction, as a felony tax evasion *Page 9 
conviction would jeopardize Amicorum's ability to obtain its liquor license. Appellants further contend that had this material fact been disclosed, they would not have agreed to Pasquale's involvement in the formation of Amicorum. Appellants produced no evidence whatsoever to support this claim, however.
 {¶ 27} Accordingly, the trial court did not err in granting Donofrio's motion for summary judgment. Appellants' assignment of error is therefore overruled.
Affirmed.
It is ordered that appellee recover from appellants costs herein taxed.
The court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate be sent to said court to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
 PATRICIA A. BLACKMON, J., and ANN DYKE, J., CONCUR *Page 1