[Cite as *Weber v. MTH Real Estate, L.L.C.*, 2025-Ohio-566.]

IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
MONTGOMERY COUNTY

| | | |
|---|---|---|
| JEFFREY WEBER | : | |
| Appellant | : | C.A. No. 30221 |
| v. | : | Trial Court Case No. 24CVF02194 |
| MTH REAL ESTATE LLC | : | (Civil Appeal from Municipal Court) |
| Appellee | : | |

. . . . . . . . . . .

O P I N I O N

Rendered on February 21, 2025

. . . . . . . . . . .

JEFFREY WEBER, Pro Se Appellant

ISABEL NEAL & PAUL B. RODERER, JR., Attorneys for Appellee

. . . . . . . . . . . .

LEWIS, J.

{¶ 1} Plaintiff-Appellant Jeffrey Weber appeals from an order of the Kettering Municipal Court granting summary judgment to Defendant-Appellee MTH Real Estate LLC ("MTH"). Weber contends the trial court erred when it granted summary judgment based on the doctrine of res judicata. For the following reasons, we will affirm the

judgment of the trial court.

I.      Facts and Course of Proceedings

{¶ 2} On March 13, 2023, Weber filed a complaint in the small claims division of the Kettering Municipal Court against MTH alleging that it had failed to return a security deposit to Weber pursuant to a lease between them relating to an apartment located at 2458 S. Patterson Boulevard in Kettering, Ohio.   The lease had been signed by Weber and MTH on September 14, 2022, and provided that the term of the lease would commence on October 1, 2022.   Weber noted in his complaint that "[t]here were numerous occasions during October 2022 where Apartment 9's kitchen sink backed up with water and food residue."   Weber also stated that the manager of the apartment complex for MTH had threatened Weber.   After the plumbing problems, Weber contacted the City of Kettering and requested an inspection of the plumbing at his apartment. According to Weber, Kettering had a licensed plumber inspect the plumbing on December 16, 2022, and the same plumber returned a day or two later to repair the plumbing to ensure it was compliant with the City's codes.   By the time Weber filed his March 13, 2023 complaint, he had moved out of the apartment.   In his complaint, Weber took issue with amounts that were deducted from the security deposit after he terminated the tenancy.   Weber sought judgment against MTH in the amount of $510 plus interest, costs, and attorney fees.

{¶ 3} A bench trial was held on April 25, 2023.   Following the trial, the small claims court granted judgment in favor of Weber for $570, which represented the return of his

security deposit minus the cost of necessary repairs. No party appealed from that judgment. On May 19, 2023, a notice of satisfaction of judgment was filed in the small claims case.

{¶ 4} On February 6, 2024, Weber filed a second complaint against MTH in the Kettering Municipal Court. He alleged that the parties had entered into a written lease agreement on September 14, 2022, covering an apartment located at 2458 S. Patterson Boulevard in Kettering. Weber noted that he had encountered problems with the kitchen sink's plumbing on three occasions between October 1 and November 18, 2022. Weber contacted the City of Kettering, which "cited MTH for three code violations, one of which stated that the plumbing defect constituted a hazard to the occupant." Weber further alleged that his interactions with MTH's representative had caused Weber "emotional distress." Weber stated that around November 20, 2022, he decided to take steps to move to a new residence. On December 23, 2022, Weber notified MTH of his intent to end his tenancy. Weber vacated the premises on January 23, 2023, and notified MTH of the same. Weber alleged that MTH violated its landlord obligations under R.C. 5321.04, breached its contract with Weber by not furnishing livable quarters as evidenced by the three building code violations, and fraudulently concealed the plumbing defects. Weber sought damages in the amount of $6,580, punitive damages, interest, costs, and attorney fees.

{¶ 5} On April 15, 2024, Weber amended his complaint. He added a claim for retaliatory action by his landlord, MTH. Weber also increased his request for actual damages to $6,654.90.

{¶ 6} On May 9, 2024, MTH moved for summary judgment on Weber's amended complaint for the following reasons: (1) res judicata barred Weber's second action; (2) Weber's complaint failed to state a claim upon which relief could be granted; (3) Weber failed to comply with the Ohio Rules of Civil Procedure; (4) the doctrine of accord and satisfaction applied; and (5) the doctrine of laches applied. MTH submitted several documents with its motion for summary judgment, including an affidavit of David Thomas, the managing member of MTH, and the filings from Weber's first lawsuit. Weber filed a memorandum in opposition to MTH's motion for summary judgment, submitting pictures and his own affidavit.

{¶ 7} On July 8, 2024, the trial court granted MTH's motion for summary judgment based on the doctrine of res judicata. The trial court explained that the second lawsuit filed by Weber sought "to litigate issues arising out of the same landlord/tenant relationship and the same lease agreement as were litigated" in the first lawsuit brought by Weber in the small claims division. The court noted that the second lawsuit "consists of issues that were or could have been raised" in the first lawsuit. The trial court concluded,

> It is clear when looking at the case at bar and the prior case (case number 23CVI02387) – the same parties are litigating the same set of facts, issues and causes of action arising out of the same circumstances and occurrences. Therefore, any subsequent action based upon any claim arising out of the transaction or occurrence that was the subject matter of the previous action, is barred.

(Citations omitted.)   Decision (July 8, 2024), p. 3-4.   Weber filed a timely notice of appeal.

II.     The Trial Court Did Not Err In Granting Summary Judgment to MTH Based on Res Judicata

{¶ 8} Weber's three assignments of error are interrelated, and we will address them together.   Weber's assignments of error state:

> The Trial Court erred by granting Movant MTH's, Motion for Summary Judgment, contrary to the purpose of Civ.R. 56(C) and contrary to Ohio law, as genuine issues of fact remain.

> The Trial Court erred by determining the credibility of the evidence, contrary to the purpose of Civ.R. 56(C) and contrary to Ohio law.

> The Trial Court's ruling is contrary to the intent of R.C. 1925 and 5321.16, and contrary to the public interest.

{¶ 9} "When reviewing a decision granting summary judgment, we apply a de novo standard of review."   *State ex rel. Armatas v. Plain Twp. Bd. of Zoning Appeals*, 2020-Ohio-2973, ¶ 8, citing *Esber Beverage Co. v. Labatt USA Operating Co., L.L.C.*, 2013-Ohio-4544, ¶ 9.   Summary judgment is appropriate when " '(1) [n]o genuine issue as to any material fact remains to be litigated; (2) the moving party is entitled to judgment as a matter of law; and (3) it appears from the evidence that reasonable minds can come to but one conclusion, and viewing such evidence most strongly in favor of the party against

whom the motion for summary judgment is made, that conclusion is adverse to that party.' " *Id.*, quoting *Temple v. Wean United, Inc.*, 50 Ohio St.2d 317, 327 (1977).

{¶ 10} "A valid, final judgment rendered upon the merits bars all subsequent actions based upon any claim arising out of the transaction or occurrence that was the subject matter of the previous action." *Grava v. Parkman Twp.*, 73 Ohio St.3d 379 (1995), syllabus. The following four elements must be met in order for the doctrine of res judicata to apply: (1) a court of competent jurisdiction rendered a valid, final judgment on the merits in an earlier action, (2) the second action involved the same parties or their privies, (3) the second action raised claims that were or could have been litigated in the first action, and (4) the second action arose out of the same transaction or occurrence that was the subject of the first action. *Portage Cty. Bd. of Commrs. v. Akron*, 2006-Ohio-954, ¶ 84, citing *Hapgood v. Warren*, 127 F.3d 490, 493 (6th Cir. 1997).

{¶ 11} "It has long been the law of Ohio that 'an existing final judgment or decree between the parties to litigation is conclusive as to all claims which were *or might have been* litigated in a first lawsuit.' " (Emphasis in original.) *Natl. Amusements, Inc. v. Springdale*, 53 Ohio St.3d 60, 62 (1990), quoting *Rogers v. Whitehall*, 25 Ohio St.3d 67, 69 (1986). Res judicata cannot be avoided simply "by seeking a different remedy in the subsequent action or by presenting grounds or theories of the case not presented in the first." *Miami Valley Hosp. v. Purvis*, 2007-Ohio-4721, ¶ 15 (2d Dist.), citing *Brown v. Dayton*, 89 Ohio St.3d 245 (2000).

{¶ 12} Our prior decision in *McCory v. Clements*, 2002-Ohio-2060 (2d Dist.), is instructive. In *McCory*, the defendant agreed to install a new concrete driveway at the

plaintiff's residence.   The driveway was completed, and full payment was made.   *Id.* at ¶ 2.   In December 1999, plaintiff filed a complaint against defendant in small claims court alleging that the driveway had been installed in an unsatisfactory and unprofessional manner.   *Id.* at ¶ 3.   The small claims court ruled in defendant's favor.   In October 2000, plaintiff filed another complaint, alleging the same facts as those in the first lawsuit but asserting two additional claims for relief under the Ohio Consumer Sales Practices Act. The trial court ruled in defendant's favor in the second lawsuit based on the doctrine of res judicata.   The plaintiff appealed.   *Id.* at ¶ 4.

{¶ 13} On appeal, the plaintiff argued that the Consumer Sales Practices Act claims did not arise from the same transaction, or common nucleus of operative facts, as the small claims action.   *Id.* at ¶ 15.   According to the plaintiff, the small claims action related to the quality of the finished product while the Consumer Sales Practices Act lawsuit related to the dealings of the parties prior to performance of the services agreed upon.   *Id.*   We affirmed the trial court's judgment, concluding:

> Both actions, as the trial court stated, "arose out of the same home improvement transaction."   The fact that McCory focuses on different facts to support the two claims does not negate Clements' res judicata defense. . . .   The supreme court has stated that res judicata extinguishes the plaintiff's rights against the defendant with respect to "all or any part of the transaction, or series of connected transactions, out of which the action arose."   . . .   We are particularly persuaded by the supreme court's pronouncements that "an existing final judgment or decree between the

parties to litigation is conclusive as to all claims which were or might have been litigated in the first lawsuit" and that "[t]he doctrine of res judicata requires a plaintiff to present every ground for relief in the first action, or be forever barred from asserting it." . . . McCory's Consumer Sales Practices Act claims arose from the same transaction as his faulty workmanship claim. Furthermore, he could have brought both claims in one cause of action. Because he did not, he is barred from asserting new claims at this time. Therefore, the trial court did not err in concluding that res judicata barred McCory's Consumer Sales Practices Act claims.

*Id.* at ¶ 16, quoting *Grava,* 73 Ohio St.3d at 382-383.

**{¶ 14}** At the time he filed his first complaint against MTH, Weber had terminated his lease with MTH and was no longer living at 2458 South Patterson Boulevard in Kettering. He was aware of all of the facts that ultimately comprised the security deposit claim in his first lawsuit and the additional four claims in his second lawsuit. Weber mentioned many of the same facts in both complaints, including the same lease the parties entered into on September 14, 2022, with respect to the property located at 2458 South Patterson Boulevard. Weber failed to identify any valid reason why he could not have raised in his first lawsuit the four additional claims that he waited to raise in his second lawsuit. Indeed, he conceded at oral argument that he could have raised all five of his claims in his first lawsuit against MTH. All of the claims raised in Weber's two lawsuits and all of the damages sought in his two lawsuits arose out of his September 2022 lease with MTH of an apartment located at 2458 South Patterson Boulevard. In

short, all of his claims involved the same lease transaction with MTH and rose out of the same common nucleus of operative facts. Therefore, unless a clear exception to res judicata applied, the trial court did not err in granting summary judgment to MTH.

**{¶ 15}** One exception to the doctrine of res judicata exists when "[a] previously undiscovered claim arising from newly discovered facts" is raised in the second lawsuit. *Montgomery v. Vargo*, 2018-Ohio-742, ¶ 19 (8th Dist.). *See also Jensen v. Blvd. Invests. Ltd.*, 2016-Ohio-5325, ¶ 14 (8th Dist.) (concluding that res judicata did not apply because the claim raised in the second lawsuit had not arisen at the time plaintiff filed his first lawsuit and the trial court denied plaintiff's attempt to amend his complaint in the first lawsuit when the claim accrued). This exception does not apply in the present case, however, because Weber failed to point to any newly discovered facts that led him to bring a previously undiscovered claim.

**{¶ 16}** Rather, Weber contends that res judicata should not apply because he was not allowed to testify in the small claims case "as to any matters other than the 'deposit.' " Appellant's Brief, p. 20. The full transcript from the April 25, 2023 trial is not in the record before us. Rather, only an excerpt from that transcript is included in our record. Based on the record before us, we are not surprised that the trial judge limited Weber's evidence to matters relating to the security deposit, because the only relief Weber sought in his March 13, 2023 complaint was the return of the security deposit. At the time he filed his March 13, 2023 complaint, Weber was aware of all of the facts and the four additional claims he ultimately raised in his second lawsuit. Despite this knowledge, Weber decided to raise only the security deposit claim in his first lawsuit. That was his choice,

not the choice of MTH or the trial court. Therefore, the small claims court's decision to not allow Weber to testify to issues other than those related to his request for the return of his security deposit did not create an exception to the doctrine of res judicata.

{¶ 17} Weber also argues that res judicata did not apply to his second lawsuit because he was prevented in the first lawsuit from bringing all of his claims due to the monetary limit on the jurisdiction of the small claims court. According to Weber, the small claims court's limited monetary jurisdiction created an exception to the doctrine of res judicata. However, the monetary limit of the small claims division generally is not a valid reason to ignore the doctrine of res judicata, especially where, as here, Weber had the option to bring the matter instead in the regular division of the municipal court. *See Purvis*, 2007-Ohio-4721, at ¶ 16 (2d Dist.), citing *Kocinski v. Reynolds*, 2000 WL 1132778, * 3 (6th Dist. Aug. 11, 2000) ("It is unfortunate that appellant's more substantial claim in the trial court is barred; however, appellant was imprudent to separate her claims arising out of a single occurrence and raise one in the municipal court.").

{¶ 18} Weber cites *Ohio Kentucky Oil Corp. v. Nolfi*, 2013-Ohio-5519 (5th Dist.), in support of his argument that res judicata should not apply to him. However, *Nolfi* is inapposite. In *Nolfi*, Frederick Nonneman had invested substantial amounts of money over a 17-year period with Ohio Kentucky Oil Corporation ("OKO"), an oil and gas drilling company. In 2003, Gregory Nolfi assumed management of Nonneman's business affairs as successor trustee. *Id.* at ¶ 3. In December 2004, Nolfi filed suit in the Cuyahoga Common Pleas Court against OKO alleging undue influence, breach of contract, and common law fraud. Nolfi voluntarily dismissed the action on January 5,

2006. A day later, however, OKO filed a complaint in the Stark County Court of Common Pleas, seeking declaratory judgment on the same issues Nolfi had previously brought in the Cuyahoga County action. Nolfi asserted numerous counterclaims, including claims that OKO had committed securities fraud by making false or misleading statements when selling securities in its oil and gas drilling programs and selling securities that were not registered or properly exempt from registration. *Id.* at ¶ 4.

{¶ 19} On February 2, 2006, Nolfi filed suit in the United States District Court for the Northern District of Ohio alleging OKO had committed federal securities fraud and had failed to properly register the securities pursuant to federal law. Nolfi later amended the federal court complaint to include state law claims of securities fraud under Ohio law, sale of unregistered securities under Ohio law, common law fraud, breach of fiduciary duty, and breach of contract. Pursuant to a motion filed by Nolfi, the Stark County Common Pleas Court stayed its case pending resolution of the federal case. *Id.* at ¶ 5.

{¶ 20} The federal court declined to exercise jurisdiction over the state law claims brought by Nolfi, stating that those claims had been originally asserted as counterclaims in the Stark County case and that considerations of judicial economy, fairness, and convenience did not require the federal court to decide the state law claims. The federal court case proceeded to trial in May 2008. The jury found in favor of Nolfi and ultimately awarded $1,777,909 in rescission damages on the federal securities claims. *Id.* at ¶ 6-8.

{¶ 21} Once the federal action had been resolved, Nolfi and OKO moved for summary judgment in the Stark County case. OKO argued the doctrine of claim

preclusion barred Nolfi's counterclaims because they arose out of the same transactions as the federal securities claims that had been fully adjudicated in the federal district court case. The trial court agreed with OKO. *Id.* at ¶ 10-11.

{¶ 22} On appeal, the Fifth District reversed the judgment of the trial court and found that an exception to res judicata applied. The court explained, in part:

> In this case, the facts are not analogous to the *Grava* case in which the plaintiff failed to avail himself of all available grounds for the zoning variance in his first proceeding. Here, appellants did avail themselves of all the various grounds for relief in the first proceeding. They asserted their claims in the federal action, as required by the transactional doctrine of claim preclusion. Unlike the plaintiff in *Grava*, appellants could not litigate their state claims in the first case through no fault of their own. The federal district court had the power to hear the state law claims as a matter of pendent jurisdiction. However, the exercise of this pendent jurisdiction is discretionary and the federal district court specifically declined to entertain the pendent state claims raised in appellants' federal action. Instead, the district court dismissed the state law claims and reserved appellants' right to pursue the matter in the Stark County action. Appellants did not have a full and fair opportunity to litigate the state law claims in federal court.

*Id.* at ¶ 27.

{¶ 23} The facts of *Nolfi* are markedly different from the facts before us. In *Nolfi*, the plaintiff was precluded from bringing all of his claims in one action through no fault of

his own. Unlike the plaintiff in *Nolfi*, Weber made the choice to file his first complaint in the small claims division of the municipal court and raise only one claim for relief. He was not forced to do so. Rather, he could have filed his first suit in the regular division of the municipal court, which would have allowed him to bring all five of his claims in one forum at one time. It was Weber's choice of forum that prevented him from doing so, not any action by MTH or the trial court.

{¶ 24} Finally, Weber contends that requiring him to file his first complaint in the regular division of the municipal court rather than in the small claims division would have been unfair and inefficient. According to Weber, it was much less costly for him to file the security deposit claim in the small claims division, and he received speedier relief in that court. While that may be true with respect to Weber's ability to quickly receive his security deposit, we disagree that filing two actions is more efficient or less costly for the parties. One of the primary purposes behind the doctrine of res judicata is promoting efficiencies by requiring parties to bring all of their claims in one proceeding when the claims relate to the same transaction or occurrence. We are reminded of the Ohio Supreme Court's discussion of efficiency and fairness in *Grava*:

> Grava argues that barring the present action would be unfair. However, he had a full and fair opportunity to present his case and obtain a zoning certificate during the proceedings involving his first application and did not appeal the zoning board's denial of his request. Grava simply failed to avail himself of all available grounds for relief in the first proceeding. Absent changed circumstances, refusing to allow Grava to use an alternate

legal theory overlooked in the previous proceedings does not work an injustice. Instead, by providing parties with an incentive to resolve conclusively an entire controversy involving the same core of facts, such refusal establishes certainty in legal relations and individual rights, accords stability to judgments, and promotes the efficient use of limited judicial or quasi-judicial time and resources. The instability that would follow the establishment of a precedent for disregarding the doctrine of res judicata for "equitable" reasons would be greater than the benefit that might result from relieving some cases of individual hardship.

*Grava*, 73 Ohio St.3d at 383-384.

**{¶ 25}** The record establishes that Weber could have and should have raised all of his claims against MTH arising out of their leasing transaction when he filed his first lawsuit against MTH. Weber chose not to do so in order to obtain his security deposit more quickly. Once he made that choice, however, he was precluded from filing a second action against MTH based on claims and damages that arose out of the same leasing transaction that was litigated in his first lawsuit against MTH. Therefore, the trial court did not err in granting summary judgment to MTH.

**{¶ 26}** Weber's assignments of error are overruled.

III.    Conclusion

**{¶ 27}** Having overruled all of Weber's assignments of error, we will affirm the judgment of the trial court.

. . . . . . . . . . . . .

TUCKER, J. and HUFFMAN, J., concur.